## In re FORD MOTOR COMPANY, Relator.

### No. 97–0430.

Supreme Court of Texas.

Argued Nov. 4, 1997.

Decided July 14, 1998.

Joe R. Greenhill, Bob E. Shannon, Joseph R. Knight, Austin, Claudia Wilson Frost, Michael S. Goldberg, Houston, Robert W. Jordan, Peter A. Moir, Jeffrey Cox, Dallas, Margaret Niver McGann, Salt Lake City, UT, for Relator.

Joel M. Fineberg, Michael L. Parham, Frank L. Branson, Ted Z. Robertson, George (Tex) Quesada, Steven M. Johnson, Dallas, for Respondent.

ABBOTT, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, HECHT and OWEN, Justices, join.

In this mandamus proceeding, we must decide whether the trial court abused its discretion by imposing discovery sanctions against Ford Motor Company. As part of the sanction order, the trial court excluded evidence Ford obtained from a nonparty and ordered Ford to pay plaintiffs' attorney's fees for both the trial court and appellate proceedings. We conclude that the trial court abused its discretion by determining that Ford's conduct was sanctionable and by awarding attorney's fees. However, because we conclude that an appeal is adequate to rectify the trial court's exclusion of evidence and award of attorney's fees for the trial court proceedings, we deny the writ as to those sanctions. However, because we conclude that Ford does not have an adequate remedy on appeal from the trial court's unconditional award of appellate attorney's fees, we conditionally grant the writ and direct the trial court to vacate that award.

## I

Heather Cohen was killed in November 1991 when the Ford Probe she was driving collided with a stopped tractor-trailer at the end of an interstate off-ramp near Weatherford, Texas. Cohen's sister, Andrea Archer, who owned the car, and Cohen's daughter, Alyssa Tiner, were both injured in the collision.

State Farm Mutual Automobile Insurance Company insured both Cohen and Archer. Shortly after the accident, State Farm assigned Cheryl Moore as the adjuster for Archer's claim. In December 1991, Moore recorded a statement by Archer, in which Archer claimed that the cruise control on the car would not disengage and that the brakes had failed. Because of Archer's statement, State Farm hired Garrett Engineering, Inc. and paid $6,000 for Garrett's engineer, J.B. Kent, to examine, inspect, and test the car.

Kent's report concluded that the cruise control wouldnot properly set prior to the accident and that the car's brakes had not failed. Garrett provided Kent's report to State Farm.

At about this same time, the Archers, including Andrea Archer, individually and as administrator of Heather Cohen's estate, and her parents, individually and as guardians of Alyssa Tiner, retained lawyers to pursue claims arising from the accident. In August 1993, the Archers sued Ford in Harrison County alleging, among other things, that the car's brakes or cruise control system had failed. State Farm was not a party to this suit. In fact, the Archers' lawyer specifically informed Moore, the State Farm adjuster, that there was no need for State Farm to be involved in the case against Ford.

In October 1993, Ford and the Archers entered into a Rule 11 agreement that Ford would not have to answer discovery already issued by the Archers and, in return, Ford would not "submit discovery" until the parties had first discussed settlement. In February 1994, while the Rule 11 agreement was still in effect, an investigator for Ford, James Childress, learned about the Kent report. Childress contacted Moore at State Farm, identified himself as Ford's investigator, and requested a copy of the Kent report. Moore said she would need to talk to her supervisor before she could release a copy of the report.

A few days later, Ford authorized a court reporter to issue a deposition notice on written questions asking State Farm to produce and authenticate Archer's claim file, including the Kent report. On February 28, 1994, the notice of deposition was served on the Archers, but not on StateFarm. That same day, Moore informed Childress that her supervisor had authorized her to provide Childress with a copy of the report, but that State Farm wanted to recover some of the cost of the report. On March 2, 1994, Moore faxed a copy of the Kent report to Childress in exchange for $500. Also on that day, the Archers filed a motion to quash the deposition on written questions, asserting various privileges and exemptions from discovery. The motion to quash was never set for a

hearing and was never considered by the trial court.

In May 1994, Ford served State Farm with the notice of deposition and subpoena duces tecum. By that time, the parties' Rule 11 agreement abating discovery had expired. State Farm did not object to the deposition notice and produced 283 pages of the claim file, including the Kent report.

On June 27, 1994, the Archers filed a motion for sanctions, asserting that Ford had violated the parties' Rule 11 agreement and the motion to quash by obtaining the claim file from State Farm. The trial court did not hear or rule on that motion for sanctions. In October 1995, on Ford's motion, the trial court transferred the case from Harrison County to Dallas County. Before the case was assigned to a district court in Dallas County, Ford filed an original petition and application for a temporary restraining order in the 44 th Judicial District Court of Dallas County, the Honorable Candace Tyson presiding. In this action, Ford sought to prevent the Archers from conducting allegedly destructive testing of the car. Ford's petition also asserted a claim for contribution and indemnity from Cohen's parents and Tiner, Cohen's minor daughter. Without the presence of the Archers or their counsel, a visiting judge granted Ford the temporary restraining order.

The Archers answered Ford's temporary restraining order petition and asserted counterclaims against Ford consistent with the causes of action they asserted against Ford in the original lawsuit. The Archers also requested that the trial court sanction Ford under Rule 13 of the Texas Rules of Civil Procedure for filing a frivolous pleading in which Ford asserted claims for contribution and indemnity against Cohen's parents, who were not in the car when the accident occurred, and Cohen's minor daughter. The Archers also sought sanctions based on Ford's alleged violation of the Dallas Civil District Court Rules requiring a party seeking a temporary restraining order to first attempt to contact opposing counsel. Before any hearing on this motion for sanctions, the temporary restraining order expired, and Ford voluntarily dismissed its temporary re-

straining order petition. At the hearing on this motion for sanctions on February 23, 1996, the parties signed a Rule 11 agreement settling "all claims for sanctions or other relief ... regarding the alleged improperly obtaining the temporary restraining order and petition." Also at this hearing, Judge Tyson notified the parties that the underlying case transferred from Harrison County would be assigned to her court.

In March 1996, the Archers filed another motion for sanctions, claiming, among other things, that Ford had obtained the claim file from State Farm through improper means. The trial court conducted a hearing on the Archers' March 1996 motion for sanctions over the course of three separate days during April and July 1996. On August 2, 1996, the trial court signed an order finding that Ford had abused the discovery process. Specifically, the trial court found that Ford had: (1) purchased the Kent report and obtained Archer's State Farm file through improper means; (2) violated a Rule 11 agreement abating discovery; (3) violated a timely filed motion to quash; (4) improperly obtained an ex parte restraining order; and (5) made frivolous allegations for contribution and indemnity against Tiner and Cohen's parents. As sanctions, the trial court ordered that: (1) Ford pay to the Archers $10,000,000 within ten days; (2) the State Farm claim file, including the Kent report and any direct or indirect reference thereto by Ford or its experts, be excluded from evidence at trial; and (3) Ford pay the Archers' attorney's fees of $25,000, plus an additional $25,000 in attorney's fees if Ford sought mandamus review of the sanctions order.

The court of appeals granted Ford's petition for writ of mandamus in part, directing the trial court to vacate the $10,000,000 sanction, which the court found to be an "arbitrary fine" not authorized by Rule 215 of the Texas Rules of Civil Procedure. 943 S.W.2d 527. However, the court of appeals left undisturbed the remainder of the trial court's sanction order, concluding that the remaining sanctions could be remedied on appeal.

## II

Mandamus is an extraordinary remedy, available only when a trial court clearly abuses its discretion and when there is no adequate remedy on appeal. *Walker v. Packer*, 827 S.W.2d 833, 840–44 (Tex.1992). We first determine whether the trial court abused its discretion in sanctioning Ford for abuse of the discovery process.

When a trial court finds that a party has abused the discovery process, Rule 215(3) authorizes a trial court to impose an appropriate sanction. Tex.R. Civ. P. 215(3). But, sanctions imposed under Rule 215 must be just under the circumstances. Tex.R. Civ. P. 215(2)(b); *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). When determining whether the sanctions a trial court imposes are just, we consider two factors. First, we consider whether there is a direct relationship between the offensive conduct and the sanctions. *TransAmerican*, 811 S.W.2d at 917. This analysis necessarily requires determining whether the underlying conduct actually constitutes an abuse of the discovery process. Second, we consider whether the sanctions are excessive. *Id.* Because the record does not support the trial court's finding that Ford's conduct was an abuse of the discovery process, we conclude that the trial court's sanction order was not just.

## A

Undergirding the trial court's conclusion that Ford abused the discovery process by obtaining the State Farm claim file through improper means is its initial finding that the State Farm claim file, including the Kent report, is privileged. The trial court did not specify which privilege protects the claim file or the Kent report. However, the Archers assert that the documents are protected by the attorney-client, work product, consulting expert, and investigative privileges.

The attorney-client privilege protects confidential communications between a lawyer and a client or their respective representatives made to facilitate the rendition of professional legal services to the client. Tex.R. Civ. Evid. 503(b) (current version at

TEX.R. EVID. 503(b)). The Archers assert that this privilege extends to an insured's communication to its liability insurer concerning an incident possibly giving rise to liability covered by the policy, and, thus, protects communicationsby Archer contained in the claim file. However, at the time Archer made her statements, there was no attorney-client relationship between Archer and State Farm. State Farm insured both Archer and Cohen, but was not their counsel or a representative of their counsel. Therefore, the attorney-client privilege does not apply. *See* TEX.R. CIV. EVID. 503(a)(3)–(4)(current version at TEX.R. EVID. 503(a)(3)–(4)).

■ The Archers also argue that the work product privilege protects the claim file and the Kent report. *See* TEX.R. CIV. P. 166b(3)(a). The work product privilege protects documents prepared by attorneys or their agents in anticipation of litigation that contain the attorneys' mental processes, conclusions, or legal theories. *See Humphreys v. Caldwell*, 888 S.W.2d 469, 471 (Tex.1994); *National Tank Co. v. Brotherton*, 851 S.W.2d 193, 200 (Tex.1993). There is no evidence in the record that the Kent report or claim file was prepared at the direction of or for the use of an attorney. Accordingly, the work product privilege *does not protect* the documents from discovery.

■ The Archers next assert that the claim file and the Kent report are exempted from discovery by the investigative or party communication privilege. The privilege protects only those communications made during or in anticipation of the *particular suit* in which the privilege is asserted. TEX.R. CIV. P. 166b(3)(d); *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 164–65 (Tex.1993); *Turbodyne Corp. v. Heard*, 720 S.W.2d 802, 804 (Tex. 1986). There is no evidence in the record that the State Farm claim file or the Kent report was prepared in connection with or in preparation of the Archers' product liability claims against Ford. To the contrary, Moore testifiedthat the State Farm claim file, including the Kent report, was compiled as part of State Farm's investigation of potential liability claims against State Farm's insureds. Therefore, the claim file and the Kent report are not exempt from discovery

pursuant to an investigative or party communication privilege in this lawsuit between the Archers and Ford.

■ Finally, the Archers contend that the consulting expert privilege protects the Kent report. The consulting expert privilege protects the identity, mental impressions, and opinions of an expert who has been informally consulted or who has been retained in anticipation of litigation or preparation for trial if the expert will not be called to testify at trial and no testifying expert has reviewed the consulting expert's conclusions. TEX.R. CIV. P. 166b(3)(b). However, there is no evidence in the record to demonstrate that any party to the suit hired Garrett Engineering or Kent as consulting experts. And, the record does not show that State Farm hired them as consulting experts. Indeed, State Farm voluntarily produced the Kent report, which indicates that State Farm did not view this as the confidential work of a consulting expert. Accordingly, the consulting expert privilege does not apply in this case.

None of the privileges asserted by the Archers protects the claim file or the Kent report from discovery by Ford. Because Ford did not obtain the documents in violation of any privilege or exemption from discovery, the trial court abused its discretion in sanctioning Ford on that basis.

**B**

■ The trial court next found that Ford abused the discovery process by obtaining the claim file and the Kent report in violation of the parties' Rule 11 agreement. The Rule 11 agreement, drafted by Ford's counsel and addressed to counsel for the Archers, provided:

This will confirm our agreement ... whereby we need not answer your discovery requests. We will not submit discovery until such time as you, Ford representatives, and myself can sit down and discuss a settlement proposal.

Although the parties dispute whether the language of the agreement prohibited Ford from submitting discovery to nonparties as well as the Archers, resolving that issue is

irrelevant to determining whether Ford violated the agreement. The agreement does not prevent any party from conducting or continuing an informal investigation of the claims asserted outside the context of formal discovery procedures. Accordingly, Ford did not violate the Rule 11 agreement by obtaining the Kent report from State Farm through the informal request of its investigator.

Nevertheless, the Archers argue that Ford violated the Rule 11 agreement by attempting to obtain the claim file from State Farm through a subpoena duces tecum. Before the Rule 11 agreement expired, Ford notified the Archers of the subpoena duces tecum Ford planned to serve on State Farm. However, the subpoena was directed to State Farm and did not require the Archers to produce any documents or answer any discovery. Moreover, the subpoena was not served on State Farm until two months after the Rule 11 agreement had expired. Therefore, Ford did not violate the Rule 11 agreement by notifying the Archers of its intent to depose State Farm because the notice was not a discovery submission. Nor did Ford violate the Rule 11 agreement by subsequently serving the subpoena duces tecum on State Farm because the agreement had expired by then. The trial court abused its discretion in sanctioning Ford for allegedly violating the Rule 11 agreement because the record conclusively establishes that Ford did not commit such a violation.

### C

■ The trial court also found that Ford abused the discovery process in proceeding with the deposition of State Farm to obtain the claim file in violation of the Archers' timely filed motion to quash. The Archers assert that their motion to quash preserved their objections and claims of privilege and obligated Ford to obtain a hearing and court ruling before proceeding with the deposition to obtain documents from State Farm.

During the two months between the date of the deposition notice and the date State Farm produced the claim file, the Archers' counsel obtained the claim file from State Farm and reviewed it for privileged documents. Despite obtaining and reviewing the claim file before State Farm produced the documents pursuant to the subpoena, the Archers did not inform State Farm of the pending motion to quash or the Archers' objections and claims of privilege. Nor did they request that State Farm withhold the documents from Ford pending resolution of their objections. Under these circumstances, the Archers waived their objections to the subpoena duces tecum, and Ford did not act improperly in proceeding to obtain documents through the deposition of State Farm. Accordingly, the trial court abused its discretion in sanctioning Ford on that basis.

### D

■ The last two bases for the trial court's sanction order relate to Ford's petition for a temporary restraining order. The trial court concluded that Ford abused the discovery process by improperly obtaining an ex parte temporary restraining order and by making frivolous allegations for contribution and indemnity against Tiner and Cohen's parents. However, the Archers had settled their disputes with Ford regarding this conduct at the February 1996 hearing on the related motion for sanctions. Therefore, the trial court abused its discretion in granting sanctions based on that conduct.

In conclusion, the record does not support any basis for the trial court's determination that Ford abused the discovery process in this case. Because Ford did not commit any sanctionable conduct, the trial court's sanction order is not just and therefore is an abuse of discretion.

### E

The trial court's sanction order also directed Ford to pay $25,000 in attorney's fees to the Archers for the trial court proceedings and an additional $25,000 in attorney's fees "if this issue is taken up on appeal or by Application for Writ of Mandamus." Under Rule 215, the trial court must predicate its award of attorney's fees on a party's abuse of the discovery process or other sanctionable conduct. TEX.R. CIV. P. 215(2)(b)(3),(8). Because we conclude that Ford did not abuse

the discovery process, there is no basis for the award of attorney's fees.

■ Moreover, although a trial court may grant appellate attorney's fees as part of a sanctions order under Rule 215, the court must condition the award on the outcome of the appeal. Rule 215 does not authorize a court to shift the costs of appellate or mandamus proceedings to the party seeking review of the trial court's sanction order unless that party is ultimately unsuccessful. *See Southwestern Bell Tel. Co. v. Vollmer,* 805 S.W.2d 825, 834 (Tex.App.—Corpus Christi 1991, writ denied) (holding that an award of appellate attorney's fees must be conditioned on the outcome of the appeal); *Smith v. Smith,* 757 S.W.2d 422, 426 (Tex.App.—Dallas 1988, writ denied); *Siegler v. Williams,* 658 S.W.2d 236, 241 (Tex.App.—Houston [1st Dist.] 1983, no writ). An unconditional award of appellate attorney's fees, as in this case, unjustly penalizes a party for seeking mandamus relief from the trial court's sanction order. *See Smith,* 757 S.W.2d at 426. Such an award in no way relates to the harm suffered as a result of the alleged discovery abuse and serves only as an improper deterrent to appellate review of the underlying sanction order. *See TransAmerican,* 811 S.W.2d at 917 (requiring a direct relationship between sanctions and the offensive conduct). Therefore, we conclude that the trial court abused its discretion by awarding appellate attorney's fees without conditioning the fee award on the outcome of the appellate court proceedings.

## III

■ Next, we must determine whether Ford has an adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex. 1992). An appellate remedy is not inadequate merely because it might involve more delay or cost than mandamus. *Id.* at 842. Appeal from a trial court's discovery order is not adequate if: (1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised; or (3) missing discovery cannot be made a part of the appellate record. *Id.* at 843.

### A

■ Ford contends that the car's deteriorated condition precludes its experts from now examining the car and opining about the condition of the car when the accident happened. Thus, Ford asserts that remedy by appeal is inadequate because the trial court's order excluding the Kent report and precluding all other expert testimony based on that report effectively prevents Ford from presenting a viable defense to the Archers' claims. We disagree.

The record demonstrates that the car is not now in the same condition as it was soon after the accident when Kent examined it and prepared his report. However, Ford has not clearly established the impossibility of now determining the condition of the brakes or cruise control system when the accident occurred. Moreover, Ford has not shown that exclusion of the Kent report and related expert testimony prevents it from otherwise defending against the Archers' claims, such that the trial would be a waste of judicial resources. *See Granada Corp. v. First Court of Appeals,* 844 S.W.2d 223, 226 (Tex. 1992) (acknowledging that appeal was an inadequate remedy where protected documents were essential to plaintiff's claims and trial court's order prevented plaintiff from maintaining his cause of action); *Walker,* 827 S.W.2d at 843. The trial court's order does not prevent Ford from presenting other evidence or testimony in support of its theory that the brakes worked properly, nor does it prohibit Ford from pursuing other theories of defense. On this record, we cannot conclude that the excluded evidence is essential to Ford's defense in this case. *See Granada,* 844 S.W.2d at 226. Therefore, Ford has an adequate remedy by appeal.

Also significant is that Ford has the claim file and the Kent report. Ford is free to develop a complete record by way of a bill of exception. *See* TEX.R.APP. P. 33.2. If, after a bill is made, the trial court maintains its previous ruling and keeps the evidence from the trier of fact, the appellate court will have a complete evidentiary record on which to determine whether the exclusion was harmful. The appeal would be adequate.

There is also a factual dispute about who is responsible for the car's changed condition that precludes us from granting mandamus relief. Ford's experts assert that the Archers' testing materially changed the car's condition, while the Archers' expert contends that Ford's own destructive testing altered the car. Both Ford and the Archers brought motions for sanctions against one another for spoliation of evidence based on the allegedly destructive testing. Although the trial court heard some testimony concerning these allegations, the court has not finally ruled on the motions. The extraordinary writ of mandamus is not available if the relator is responsible for its lack of an adequate remedy on appeal. *See Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993) (acknowledging that issuance of mandamus is largely controlled by equitable principles). For us to conclude that exclusion of the Kent report severely compromises Ford's ability to present its defense and makes appeal inadequate requires us to resolve this factual dispute in Ford's favor. This we cannot do. *West v. Solito,* 563 S.W.2d 240, 245 (Tex.1978) ("[A]n appellate court may not deal with disputed areas of fact in a mandamus proceeding.").

Ford also has an adequate remedy on appeal from the attorney's fees award related to the trial court proceedings. Under Rule 215, sanctions for abuse of discovery, including an award of attorney's fees, are subject to review on appeal from the final judgment. TEX.R. CIV. P. 215(2)(b)(3), (8); *Street v. Second Court of Appeals,* 715 S.W.2d 638, 639–40 (Tex.1986).

### B

Whether appeal is an adequate remedy for the trial court's award of attorney's fees against Ford for seeking mandamus relief is a different matter. That award effectively punishes Ford for seeking mandamus relief because Ford must pay an additional $25,000 to the Archers following these mandamus proceedings regardless of Ford's success in obtaining relief. As previously stated, a trial court has no discretion to award appellate attorney's fees that are not conditioned on the party's failure to obtain relief.

A monetary penalty for seeking mandamus relief takes something that cannot be restored by appeal: the unfettered right to seek any relief that may be available by mandamus. The most appeal can restore is the penalty improperly imposed; it cannot free the party of the chilling effect the penalty has had on the exercise of the party's legal rights. If a party's sole relief were to pay the penalty and recover it in an eventual appeal, the party would need to consider whether mandamus relief, if obtained, would be worth the price. Holding that recovery on appeal is adequate relief would allow a trial court to set a price on mandamus actions to discourage their use. A party cannot be required to pay a penalty for obtaining relief by mandamus, even if the penalty is someday recoverable. The court's sanction is akin to the improper sanction we overturned in *Travelers Indemnity Co. of Connecticut v. Mayfield,* 923 S.W.2d 590, 595 (Tex.1996), where we held that the trial court's order forcing an insurance carrier to pay for the claimant's court-appointed counsel so skewed the procedural dynamics of the case that eventual remedy by appeal was inadequate. *See id.* ("[T]he litigation strategy of the party bearing the expenses will be unfairly hindered, knowing that at each step ... it must bear the expenses of both sides.").

We also addressed a similar problem in *Braden v. Downey,* 811 S.W.2d 922, 929 (Tex. 1991), where we held that appeal is not an adequate remedy for monetary sanctions for discovery abuse ordered to be paid before final judgment if the party's continuation of the litigation is threatened. If the sanctions are small enough that the party's continuation of the litigation is not seriously impaired, then mandamus relief is not available because the appellate remedy is adequate. But sanctions for discovery abuse impact only indirectly a party's continued prosecution of the litigation. A penalty imposed on a party's prospective exercise of legal rights is a different situation. It is as if a court required a party to pay a penalty if the party attempted to conduct any discovery. The penalty directly impacts the party's exercise of its rights under the rules of procedure. The party would be required to assess

whether conducting discovery would be worth the eventuality of recovering the penalty on appeal.

■■■ We therefore hold that appeal is not an adequate remedy when a court imposes a monetary penalty on a party's prospective exercise of its legal rights. The dissenting JUSTICES argue that this is a departure from *Braden,* but *Braden* is not inconsistent with our holding here. Requiring immediate payment of attorney's fees as a sanction for past discovery abuse cannot be equated with requiring payment of attorney's fees for any attempt to seek mandamus relief. The former is authorized by Rule 215 of the Texas Rules of Civil Procedure; the latter is not. The former is fully remediable by appeal unless the party's ability to prosecute the case further is jeopardized. The latter cannot be remedied by appeal because the party's right to try to seek relief from an appellate court without penalty is lost forever, even if the money is recovered.

*Braden* allows a trial court reasonable latitude in curbing discovery abuse without pressuring a litigant to give up the case altogether. To deny mandamus relief in the present circumstances would permit a trial court to erect a serious impediment to seeking that relief even if the party's continuation of the litigation were not threatened. This we cannot permit.

✻   ✻   ✻   ✻

For the foregoing reasons, we conditionally grant the writ as to the unconditional award of appellate attorney's fees, and we direct the trial court to vacate that portion of the sanctions order. We deny Ford's petition in all other respects.

ENOCH, Justice, filed an opinion concurring in part and dissenting in part, in which SPECTOR, Justice, joins.

1.   827 S.W.2d 833 (Tex.1992).

2.   811 S.W.2d 922 (Tex.1991).

3.   *See also In re Smith Barney, Inc.,* 975 S.W.2d 593, 600, 1998 WL 352958 (Tex.1998) (Hankinson, J., concurring) (stating that the Court's new "approach [to mandamus] unwisely undermines the requirements of *Walker* "); *In re D.A.S.,* 973

BAKER, Justice, filed an opinion concurring in part and dissenting in part.

HANKINSON, Justice, did not participate in the decision.

ENOCH, Justice, joined by SPECTOR, Justice, concurring in part and dissenting in part.

The teachings of *Walker v. Packer* [1] and *Braden v. Downey* [2] are now in doubt. *Walker* was our laudable effort to set mandamus proceedings in Texas on a predictable course. *Braden* provided a narrow, but needed, exception to the appellate remedy for sanctions announced in our rules of procedure. In issuing mandamus, the Court veers off course.[3] While I join much of the Court's opinion, I must dissent from part IIIB.

There are two fundamental issues when a party seeks mandamus: (1) whether the trial court abused its discretion; and (2) whether the relator has an adequate remedy by appeal.[4] I agree with the Court that the trial court abused its discretion in making the appellate attorney's fees sanction unconditional.

I disagree, however, that Ford lacks an adequate remedy on appeal. The Court reaches this conclusion because of the sanction's supposed "chilling effect." [5] First, even if a "chilling effect" was all one needed to avoid the appellate process, mandamus still would not be supported by the facts in this case. Ford was not "chilled" by the $25,000 sanction. A Ford representative testified that Ford could pay the $10 million sanction imposed by the trial court and still continue the litigation. And, Ford pursued mandamus relief.

This brings me to *Braden.* Rule 215(3) of the Texas Rules of Civil Procedure states that an attorney's fees sanction "shall be

S.W.2d 296, 300 (Tex.1998) (Baker, J., dissenting) (noting that the Court is only "paying lip service to the lack of an adequate appellate remedy").

4.   *See Walker,* 827 S.W.2d at 839.

5.   988 S.W.2d at 722.

subject to review on appeal from the final judgment."[6] In *Braden,* we wrote that this language means just what it says—a party has an adequate remedy on appeal from an attorney's fees award.[7] But we carved out a limited exception in the mandamus context; if the attorney's fees sanction was made payable before final judgment and the award ***threatened to prevent a party from continuing the litigation,*** then an appeal was not adequate.[8]

The Court discounts *Braden* with the claimed distinction that its only concern here is with "penalt[ies] imposed on a party's *prospective* exercise of legal rights."[9] The Court's reasoning obfuscates *Braden.* The trial court imposed the sanction at issue here—unconditional appellate attorney's fees—because of Ford's *past* conduct. The Court recognizes in this case that an appellate attorney's fees sanction, which of course is prospective, can be imposed for *past* discovery abuse; we just hold that the award cannot be unconditional.[10]

More significantly, *Braden* was not about whether the sanction order was prospective. Rather, *Braden* was about whether the attorney's fees sanction had an effect on the party's ability to continue the litigation. The *Braden* exception *is* prospective. It simply does not matter whether an already-imposed sanction threatens a party's next step (*Braden* ) or the party foregoes the next step because the sanction is threatened (this case). In either event, the question is whether the sanction threatens the sanctioned party's ability to proceed with the case. The Court's dichotomy—"past vs. prospective"— is false.

A final note. While we concluded in *Braden* that the required immediate payment of the sanction would have jeopardized Braden's ability to continue the litigation, we did not issue a writ of mandamus. Rather, we ordered the trial court to modify its order "to

allow Braden an opportunity to appeal before such sanctions must be paid."[11] In this case, the order is silent about when the sanction must be paid. Moreover, the only evidence about whether the sanction threatened to prevent Ford from continuing the litigation is unequivocally that it did not. Yet Ford gets more relief than Braden did. So much for *Walker* 's promise of predictability.

Ford has an adequate remedy on appeal from the appellate attorney's fees sanction. Because *Walker* and *Braden* compel a different result than that reached by the Court, I respectfully dissent from part IIIB of the Court's opinion.

BAKER, Justice, concurring and dissenting.

This is a mandamus proceeding. Mandamus is "an extraordinary remedy, available only in limited circumstances." *Canadian Helicopters, Ltd. v. Wittig,* 876 S.W.2d 304, 305 (Tex.1994); *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992). We issue mandamus only to correct a clear abuse of discretion when there is no other adequate remedy at law. *See Canadian Helicopters,* 876 S.W.2d at 305. Today, the Court concludes Ford is not required to wait until appeal from final judgment to obtain relief from the trial court's award of unconditional appellate attorney's fees, and holds that mandamus is appropriate. Today's holding is contrary to both this Court's rules and precedent. Accordingly, I respectfully dissent to this part of the Court's opinion and its decision to grant relief.

### RULE 215 AND *BRADEN v. DOWNEY*

Rule 215 of our Rules of Civil Procedure provides that if a party fails to comply with proper discovery requests or to obey an order to provide or permit discovery the trial court may order the offending party to pay the other side's reasonable expenses, includ-

---

6. Tex.R. Civ. P. 215(3).

7. *See Braden,* 811 S.W.2d at 928.

8. *See id.* at 929.

9. 988 S.W.2d at 722 (emphasis added).

10. *See id.* at 721 (holding that "although a trial court may grant appellate attorneys' fees as part of a sanctions order under Rule 215, the court must condition the award on the outcome of the appeal").

11. *Id.* at 929.

ing attorney's fees, and that such an order is subject to review on appeal from the final judgment. *See* TEX.R. CIV. P. 215(2)(b)(8). Rule 215 also provides that if the trial court finds a party is abusing the discovery process, the court may award reasonable expenses and attorney's fees. Again, this sanction is subject to review *on appeal* from the final judgment. *See* TEX.R. CIV. P. 215(3).

In the past, this Court has followed Rule 215 and has held that trial court attorney's fee awards for discovery abuse are not appealable until the trial court renders a final judgment. *See Braden v. Downey,* 811 S.W.2d 922, 928 (Tex.1991). In *Braden,* this Court followed two earlier cases that held the right of appeal is an adequate remedy for review of discovery sanctions and precludes mandamus review. *See Street v. Second Court of Appeals,* 715 S.W.2d 638, 639-40 (Tex.1986); *Stringer v. Eleventh Court of Appeals,* 720 S.W.2d 801, 802 (Tex.1986). We recognized that if all monetary sanctions like those in *Street* and *Stringer* were reviewable by mandamus, mandamus would soon cease to be an extraordinary writ. We concluded that the judicial system could not afford immediate review of every discovery sanction. *See Braden,* 811 S.W.2d at 928.

But we also recognized that imposing monetary sanctions for discovery abuse must not result in total or even significant preclusion of access to the courts. *See Braden,* 811 S.W.2d at 929. If by imposing monetary sanctions, the trial court's order threatens a party's continuation of the litigation, appeal does not afford an adequate remedy unless the trial court defers payment of the sanctions until final judgment. *See Braden,* 811 S.W.2d at 929; *see also Electronic Data Sys. v. Tyson,* 862 S.W.2d 728, 734 (Tex.App.— Dallas 1993, orig. proceeding); *Susman Godfrey, L.L.P. v. Marshall,* 832 S.W.2d 105, 108 (Tex.App.—Dallas 1992, orig. proceeding). An order deferring payment affords the sanctioned party the opportunity to supercede the judgment and perfect an appeal. *See Braden,* 811 S.W.2d at 929; *Susman Godfrey,* 832 S.W.2d at 108. To obtain such an order the litigant must show that a monetary sanction will preclude his or her access to the court. *See Braden,* 811 S.W.2d at 929;

*Susman Godfrey,* 832 S.W.2d at 108. If a party makes this contention to the trial court, the trial court must either: (1) find that the sanction is payable only at a date that coincides with or follows entry of a final order terminating the litigation; or (2) make express written findings after a prompt hearing about why the sanction does not have a preclusive effect. *See Braden,* 811 S.W.2d at 929; *Electronic Data Sys.,* 862 S.W.2d at 734.

## ADEQUATE REMEDY BY APPEAL

Mandamus will not issue where there is a clear and adequate remedy at law, such as a normal appeal. *See Walker,* 827 S.W.2d at 840; *State v. Walker,* 679 S.W.2d 484, 485 (Tex.1984). As the Court has repeatedly stated, mandamus is intended to be an extraordinary remedy, available only in limited circumstances. *See Walker,* 827 S.W.2d at 840. Mandamus will issue only in situations involving manifest and urgent necessity and not for grievances that may be addressed by other remedies. *See Walker,* 827 S.W.2d at 840; *Holloway v. Fifth Court of Appeals,* 767 S.W.2d 680, 684 (Tex.1989).

We have consistently held that we lack jurisdiction to issue mandamus to supervise or correct a trial court's incidental rulings when there is an adequate remedy by appeal. *See Canadian Helicopters,* 876 S.W.2d at 306; *Holloway,* 767 S.W.2d at 684. We never award mandamus where the law provides another plain, adequate, and complete remedy. *See Iley v. Hughes,* 158 Tex. 362, 311 S.W.2d 648, 652 (1958); *Aycock v. Clark,* 94 Tex. 375, 60 S.W. 665, 666 (1901). This requirement is met only when parties are in danger of permanently losing substantial rights. *See Canadian Helicopters,* 876 S.W.2d at 306. The requirement that persons seeking mandamus establish the lack of an adequate appellate remedy is a "fundamental tenet" of mandamus practice. *See Walker,* 827 S.W.2d at 840; *Holloway,* 767 S.W.2d at 684. This fundamental tenet is well settled. *See Walker,* 827 S.W.2d at 840.

## THE TRIAL COURT'S SANCTION ORDER

As the Court acknowledges, the trial court's sanction order was for discovery

abuse under Rule 215(3). The order imposed three monetary sanctions against Ford. The first was a $25,000 award of attorney's fees for prosecuting the motion for sanctions payable ten days from the date of the trial court's order. The second was a $25,000 award of attorney's fees if Ford appealed or applied for mandamus from the court's sanction order. The order did not specify a date for payment of this award. The third assessed a $10,000,000 fine, payable to the plaintiffs to punish Ford for its wrongful and abusive discovery conduct and to deter others from the same conduct.

The court of appeals granted Ford mandamus relief in part, vacating the $10,000,000 fine. However, the court of appeals left undisturbed the other two monetary sanctions as well as the trial court's order excluding the Kent report from evidence. Here, the Court holds the trial court abused its discretion in sanctioning Ford for discovery abuse, but concludes that Ford has an adequate remedy by appeal for the excluded evidence and the attorney's fees awarded for the sanctions proceeding. I have no quarrel with the Court on these conclusions.

However, the Court further holds that Ford need not wait until appeal from final judgment to obtain relief from the unconditional attorney's fees award because the penalty directly impacts the party's exercise of its rights, and therefore is an abuse of discretion, warranting mandamus relief. I agree with the Court that the trial court abused its discretion in unconditionally awarding $25,000 to the Archers' attorneys regardless of Ford's success in obtaining mandamus relief. But, I disagree with the Court's conclusion that Ford need not wait until appeal from the final judgment to obtain relief from the trial court's order.

The Court recognizes that even with an abuse of discretion, for mandamus to issue, the party seeking that relief must establish the lack of an adequate appellate remedy. Indeed, the Court declines to award Ford mandamus relief on the evidentiary issue and the attorney's fees related to the sanction proceedings for the very reason that Ford has an adequate appellate remedy. But, the Court reaches the opposite conclusion about Ford's right to mandamus review of the attorney's fee awarded for prosecuting the mandamus action to obtain relief from this award. Further, the Court reaches this conclusion in the face of our rules that require appellate rather than mandamus review of awards of attorney's fees for discovery abuse. See TEX.R. CIV. P. 215(2)(b)(8),(3); Street, 715 S.W.2d at 639–40.

In doing so, the Court pays lip service to Braden and other case law that interprets Rule 215 and provides the guiding principles for the limited circumstances when a party may seek mandamus relief from a trial court's award of attorney's fees for discovery abuse. The Court then misapplies Braden because it cannot reconcile the principles the case establishes. The record discloses that Ford has the financial ability to pay the attorney's fees and still continue with the litigation. Indeed, in support of Ford's motion to stay the sanctions order, Ford's representative testified that Ford's assets were sufficient to pay the $10,000,000 sanction and still continue its defense. Here, the sanction award can be remedied by appeal and the party's right to seek relief from an appellate court without penalty is not lost forever. Accordingly, Ford has an adequate remedy on appeal. See Braden, 811 S.W.2d at 929.

## THE ROAD OF NO RETURN—REVISITED

Our requirement that mandamus will not issue when there is an adequate remedy by appeal is well settled. See Walker, 827 S.W.2d at 840. The delay in having questions decided through the appellate process does not justify an appellate court's intervention through the extraordinary writ of mandamus. Interference is justified only when parties stand to lose their substantial rights. See Walker, 827 S.W.2d at 842; Iley, 311 S.W.2d at 652. Here, the record shows that Ford is not in jeopardy of losing substantial rights. Unfortunately, and although well settled, the Court once again honors the lack of adequate appellate remedy requirement more in its breach than in its observance. Even more unfortunate is the fact that despite precedent like Braden and Walker, the

Court again sets a course down a road of no return.

In *Canadian Helicopters,* the Court reaffirmed that the Court lacks jurisdiction to issue mandamus to supervise or correct a trial court's incidental rulings where there is an adequate remedy by appeal. *See Canadian Helicopters,* 876 S.W.2d at 305. In *Canadian Helicopters,* the Court held, in the context of a special appearance, that Canadian Helicopters had an adequate remedy by appeal and accordingly denied Canadian Helicopters mandamus relief. However, the Court did state that it did not foreclose the possibility that a trial court, in denying a special appearance, may act with such disregard for guiding legal principles that the defendant's harm becomes irreparable, exceeding mere increased costs and delay. In such a situation, a defendant's remedy by appeal may be inadequate and mandamus therefore appropriate. *See Canadian Helicopters,* 876 S.W.2d at 308–09.

It was not too long before this possibility became a reality. In *National Indus. Sand Ass'n v. Gibson,* the Court held that mandamus was appropriate because the trial court acted with "such disregard for guiding principles of law that the harm to [National Sand] was irreparable." *See National Indus. Sand Ass'n v. Gibson,* 897 S.W.2d 769, 771 (Tex.1995).[1]

The Court followed *National Indus. Sand* with *Travelers Indem. Co. of Conn. v. Mayfield,* where the Court held that requiring a party to advance the litigation costs of the opposition in addition to its own expenses so skews the litigation progress that any subsequent remedy by appeal is inadequate. *See Travelers Indem. Co. of Conn. v. Mayfield,* 923 S.W.2d 590, 595 (Tex.1996). The Court granted mandamus relief despite the fact that Travelers did not dispute, and in fact acknowledged, that it could challenge the trial court's order in a regular appeal. *See Mayfield,* 923 S.W.2d at 594.

Close on the heels of *Mayfield,* came *CSR Ltd. v. Link,* 925 S.W.2d 591 (Tex.1996). *CSR*was another special appearance case and the Court determined that appeal was inade-quate because the problems inherent in mass tort cases presented extraordinary circumstances. *See CSR,* 925 S.W.2d at 597.

Now, in this case the Court holds mandamus is appropriate despite the fact that Ford has an adequate remedy on appeal. In my view, this decision represents yet another mile marker down the road of no return, where the Court ignores its own rules and its own precedent and issues mandamus simply because it disagrees with the trial court's ruling. *See Mayfield,* 923 S.W.2d at 595 ( Baker, J., dissenting); *CSR Ltd.,* 925 S.W.2d at 604 (Baker, J., dissenting). Because the Court ignores Rule 215(3)'s mandate and continues its departure from its previously clear holdings in *Braden*and *Walker,* I dissent.

1. In 1997, the Legislature changed the law and provided the right to appeal denial of a special