**In re LOUISIANA WORKERS' COMPENSATION CORPORATION.**

No. 10–02–200–CV.

Court of Appeals of Texas, Waco.

Aug. 4, 2003.

David C. Redford, Brown Sims, P.C., Houston, for relator.

Andrew Sarne, Chris C. Pappas, David R. Thrasher, Dunn, Kacal, Adams, Pappas & Law, P.C., Houston, Christina L. McCracken, for real party in interest.

Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

## OPINION

REX D. DAVIS, Chief Justice.

Superior Diving Company, Inc. filed suit against Louisiana Worker's Compensation Corporation ("LWCC") to recover the sums it paid in settlement of a claim it contends is covered by the worker's compensation policy it has with LWCC. LWCC filed a motion to compel Superior Diving to produce documents related to the settlement of the underlying suit and to permit the deposition of the insurance adjuster who handled the claim on behalf of Superior Diving's excess insurer. Respondent, the Honorable Wayne Bridewell, Judge of the 249th District Court of Somervell County, denied the motion. LWCC seeks a writ of mandamus compelling Respondent to grant the motion.

## BACKGROUND

Superior Diving employee Curtis Antill suffered injuries while engaged in a dive to survey and remove debris from a tank at the Comanche Peak nuclear power generating facility owned by Texas Utilities Electric Company ("TU Electric") in Glen Rose. Antill filed suit against TU Electric and Superior Diving. Superior Diving submitted a worker's compensation claim to LWCC on behalf of Antill. LWCC denied coverage.

Superior Diving subsequently provided LWCC copies of Antill's petition and a third-party petition filed against it by TU Electric. Superior Diving requested LWCC to provide its defense in the lawsuit and to indemnify it under the terms of the worker's compensation policy. LWCC denied this request.

Superior Diving and TU Electric settled with Antill for $1.1 million. Superior Diving paid $675,000 of the settlement. Superior Diving then filed suit against LWCC to recover the sums it paid in settlement of the Antill claim.

LWCC served a request for production on Superior Diving seeking:

> any and all notes, memoranda, research and correspondence in the files of Dunn, Kacal, Adams, Pappas & Law related to Cause No. 97–5103, styled *Antill v. Texas Utilities Electric Company*, in the 249th District Court of Somervell County, Texas.

LWCC also sought "any and all notes, memoranda, research and correspondence in the files of Agricultural Excess and Surplus Insurance Company pertaining to the suit."

Superior Diving filed a response objecting that these two requests sought documents protected by the attorney-client privilege and/or the work product privilege. Superior Diving provided a privilege log with this response in which it listed 144 documents being withheld from production and the basis for its objection to their production. *See* TEX.R. CIV. P. 193.3; *In re Monsanto Co.*, 998 S.W.2d 917, 924 (Tex. App.-Waco 1999, orig. proceeding). Superior Diving later provided a supplemental privilege log listing 137 additional documents being withheld. *See* TEX.R. CIV. P. 193.5.

LWCC filed a motion to compel production of the withheld documents and to depose the insurance adjuster who handled the claim for Superior Diving's excess insurer. *Id.* 193.4. In this motion, LWCC stated:

LWCC does not deny that it seeks materials, documents and testimony that would otherwise be protected by the work product and attorney client priviledge [sic]. Nevertheless, the priviledges [sic] have been waived by the Plaintiff under the offensive use doctrine established by the Texas Supreme Court in *Ginsberg v. The Fifth Court of Appeals*, 686 S.W.2d 105 (Tex.1985).

Superior Diving filed a response in which it contended that it had not waived these privileges because the documents and testimony sought are not "outcome determinative" and are not the only source by which LWCC can obtain the information sought. *See Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex.1993) (orig.proceeding); *In re Tjia*, 50 S.W.3d 614, 617 (Tex.App.-Amarillo 2001, orig. proceeding). Following a hearing, the trial court granted LWCC's motion in part by directing the parties to conduct a deposition of the insurance adjuster who handled the Antill claim.

After this deposition, LWCC filed a second motion to compel the production of the documents at issue and to require a second deposition of the adjuster in which LWCC could question him regarding the documents sought. LWCC characterized the first deposition as "wholly insufficient" because the adjuster did not review pertinent documents in the insurance company's file and testified only from his personal recollection of events which had occurred three years earlier. LWCC contended that the documents sought were essential to its claim and reiterated its contention that Superior Diving has waived any privileges with respect to the documents under the offensive-use doctrine.

Superior Diving filed a response to LWCC's second motion to compel repeating its contention that it has not waived the privileges asserted under the offensive-use doctrine.

At the hearing on LWCC's second motion to compel, Respondent directed Superior Diving to provide him copies of the documents at issue for an in-camera review. *See* Tex.R. Civ. P. 193.4(a). Superior Diving complied. After Respondent conducted the in-camera review, he signed an order denying LWCC's motion to compel.

## PROPRIETY OF MANDAMUS RELIEF

■ "Mandamus issues only to correct a clear abuse of discretion or the violation of a duty imposed by law when there is no other adequate remedy at law." *In re Taylor*, 28 S.W.3d 240, 248 (Tex.App.-Waco 2000, orig. proceeding) (quoting *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig.proceeding)); *accord In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998) (orig.proceeding); *In re Kellogg Brown & Root*, 7 S.W.3d 655, 657 (Tex. App.-Houston [1st Dist.] 1999, orig. proceeding).

### CLEAR ABUSE OF DISCRETION

■ LWCC contends that the disclosure of the documents at issue and a second deposition of the adjuster are essential to establish that Superior Diving settled the Antill suit because it had an indemnity agreement with TU Electric rather than because LWCC denied coverage. A TU Electric attorney has testified by deposition that the indemnity agreement was the reason for the settlement. The insurance adjuster for Superior Diving testified in his deposition that the indemnity agreement had no bearing on the decision to settle the suit. LWCC seeks the documents at issue to establish that the indemnity agreement was in fact the reason Superior Diving agreed to the settlement.

■ To show a waiver of privilege under the offensive-use doctrine, the party seeking discovery must establish: (1) the party asserting the privilege is seeking affirmative relief; (2) "the privileged information sought must be such that, if believed by the fact finder, in all probability ... would be outcome determinative of the cause of action asserted"; and (3) disclosure of the privileged information is "the only means by which the aggrieved party may obtain the evidence." *Republic Ins. Co.*, 856 S.W.2d at 163; *Tjia*, 50 S.W.3d at 617.

Regarding the second element, the Supreme Court has said, "Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go to the very heart of the affirmative relief sought." *Republic Ins. Co.*, 856 S.W.2d at 163; *accord Tjia*, 50 S.W.3d at 617.

Our review of the record leads us to conclude that LWCC "has not clearly established the impossibility" of establishing the basis for the settlement of the Antill suit without the documents and deposition testimony sought. *See Ford Motor Co.*, 988 S.W.2d at 721; *Kellogg Brown & Root*, 7 S.W.3d at 658. Neither has LWCC shown that exclusion of the documents and deposition testimony sought "prevents it from establishing its [defense], such that a trial would be a waste of judicial resources." *Kellogg Brown & Root*, 7 S.W.3d at 658; *accord Ford Motor Co.*, 988 S.W.2d at 721. For these reasons, we conclude that LWCC has failed to establish that the documents and deposition testimony sought are "outcome determinative" or that they are "the only means by which [it] may obtain the evidence." *See Republic Ins. Co.*, 856 S.W.2d at 163; *Tjia*, 50 S.W.3d at 617.

Accordingly, LWCC has failed to establish that Respondent committed a clear abuse of discretion by denying its second motion to compel.

## ADEQUATE REMEDY AT LAW

■ An appeal from an order denying discovery is not adequate if: (1) "the party's ability to present a viable claim or defense is vitiated or severely compromised"; or (2) the withheld documents "cannot be made a part of the appellate record." *Walker*, 827 S.W.2d at 843; *accord Ford Motor Co.*, 988 S.W.2d at 721; *Kellogg Brown & Root*, 7 S.W.3d at 657. The courts in *Ford Motor Company* and *Kellogg Brown & Root* held that the relators in those proceedings failed to establish that they had no adequate remedy at law for either of these reasons. *See Ford Motor Co.*, 988 S.W.2d at 721–22; *Kellogg Brown & Root*, 7 S.W.3d at 658. We hold that LWCC has likewise failed to establish that it has no adequate remedy at law.

Justice TOM GRAY concurring.

TOM GRAY, Justice, concurring.

The majority opinion does a good job of making this mandamus action look like the culmination of a discovery dispute that the parties properly developed and framed, that the trial court reviewed and decided, and that we should now resolve by denying the petition on the merits. The truth is that on the record and briefs before this Court I cannot tell what the parties presented to the trial court, nor how the trial court determined that the requested discovery should be denied. It is the Relator's burden to show that the trial court abused its discretion in denying the requested discovery, and that there is no adequate remedy at law. Because, on this record and these briefs, I cannot affirmatively make that determination, I join the majority in denial of the petition for writ of mandamus.

Let me explain.

LWCC sought certain documents in discovery. Superior resisted discovery by making numerous objections and assertions of privileges. As best as I can tell from this record, the objections have never been the subject of a hearing or a ruling.

On the other hand, the privileges have been the subject of at least two hearings. But no evidence was introduced at either of these hearings to prove any of the privileges. Notwithstanding the total failure to prove the privileges, the trial court ordered certain documents produced in camera for review.

By the time of the in-camera review, two privilege logs had been prepared and provided to opposing counsel. But neither privilege log matches the documents produced in camera. After considerable effort, and the expenditure of substantial time, I was able to match most, but not all, of the in-camera production to entries on the first of the two privilege logs. I still do not know the status of the documents listed on the first log but not produced, or the status of any of the documents on the supplemental log. No one else seems to be concerned about that. I am.

The entries on the log are not particularly helpful. "DOCUMENT" and "OBJECTION" are the only two column headings. Under "DOCUMENT" is listed four pieces of information: the general type of document (mostly "letter"), date, addressee, and signatory. Under "OBJECTION" the only objection listed, the same for all 144 entries, is: "attorney-client privilege and attorney work product doctrine."

After spending the time to match the roughly 66 documents produced in camera to the corresponding entries on the privilege log listing 144 items, I have a few observations about the log, the parties' use of it, the trial court's use of it, and my use of it.

1. The documents produced in camera were apparently intended to be sequentially numbered from "Plaintiff's 1" through "Plaintiff's 235." But there are unexplained gaps in this sequence. (*E.g.*, P48, P94–P96.)

2. Sometimes the complete document, though described, was not produced. Sometimes only the first page of a multi-page document was produced. And for at least one document the first page was not produced. (*E.g.*, Nos. 9(P12), 84 (P140), 87 (P141), 89 (P142), 116 (P188).)[1]

3. The log does not identify all the persons who received the document. Recipients who were copied or blind-copied with the documents are not identified. (*E.g.*, Nos. 56(P32), 61(P45), 102 (P149), 142 (P228).)

4. Many of the documents produced did not include the attachments referenced in the document. (*E.g.*, Nos. 35(P15), 45(P16), 46(P17), 47(P19), 90 (P143).)

5. The log includes documents that LWCC had authored or received, or at least LWCC is listed as a recipient. (*E.g.*, Nos. 103 (P146), ——(P18)[2].)

6. There seems to be some duplication in the production. (*E.g.*, No. 134;

---

1. References to the documents as numbered in the first privilege log are followed, where applicable, by parenthetical references to the numbers of the corresponding documents produced in camera.

2. No entry could be found on either log corresponding to the date of this letter, November 22, 1996.

compare P214–P215 *with* P217–P218.)

7. There appear to be errors in the dates as given in the log. (*E.g.*, Nos. 105 (P148), 140 (P224–P225), 141 (P226–P227).)

8. Not even the most basic descriptive information is included in the log. For example, if an item transmitted or included a draft it is not described as such in the log. (*E.g.*, Nos. 63(P65), 79(P97), 80 (P106).) Even the index of the in-camera production prepared by the trial court clerk contains more information, without revealing the substance of the communication, than the privilege log prepared by Superior.

9. Documents sent to the mediator are identified in the privilege log, but no privilege based upon Texas Civil Practice and Remedies Code Section 154.073(b) was asserted. (*E.g.*, Nos. 3 (P1–P4), 142 (P228)); TEX. CIV. PRAC. & REM.CODE ANN. § 154.073(b) (Vernon Supp.2003).

10. The trial court had previously ordered "all correspondence to or from Scott McElroy" produced in camera. There are numerous documents listed on the first log that were to or from McElroy that, unless they were duplicated elsewhere in the log, were not produced in camera. (*E.g.*, Nos. 17, 24, 43, 77, 82, 93, 95, 97, 99, 100, 124.) Additionally, none of the documents listed on the supplemental privilege log appears to have been produced in camera, unless they were duplicated in the first privilege log. Many of those documents indicate they are either to or from McElroy, and accordingly should have been produced in camera in

response to the trial court's order. As best as I can tell from the record before me, they were not.

This was not a large document production. These were not complicated issues. The discovery was requested well over two years after the effective date of the amended rules of discovery regarding the procedure for making objections and asserting privileges to requested discovery, and for obtaining rulings thereon. *See* TEX.R. CIV. P. 193. The discovery was conducted almost two years after this Court described in great detail the new discovery procedures. *See In re Monsanto,* 998 S.W.2d 917 (Tex.App.-Waco 1999, orig. proceeding). Yet the parties and the trial court totally failed to follow the discovery procedures prescribed by the rules and this Court's opinion. The privilege log fails to describe "the information or materials withheld in such a way that the requesting party can assess the applicability of the specific privilege, but not in such a way as to reveal the privileged information itself or otherwise waive the privilege." *See id.* at 924.

When the privilege log fails to include the information necessary to test the privilege, and documents are produced in camera, the trial court must make this observation, advise the parties, and require the preparation of an adequate privilege log. The party seeking documents, in this case LWCC, has no way of determining the gross deficiencies in the privilege log, such as failing to disclose all persons who received a copy of the document. If this information is not disclosed in the log, and the trial court does not require the correction of this omission, a document that was distributed beyond the scope of the privilege may be improperly protected when it should have been produced. Without knowing all the recipients of a document, there is no way that the requesting party

can test for waiver of the attorney-client privilege by disclosure to persons not included within the privilege.

No effort was made to prove the privileges asserted. On this basis alone, the trial court should have ordered all the documents produced. But the issue that the parties have presented to us in this proceeding is not whether the privileges asserted were proven. The production in camera was not even done to prove the privilege, but rather was to determine if an exception to the privileges, the offensive-use doctrine, was applicable.

Indeed, the parties have ignored the entire process and presented this entire proceeding on whether the offensive-use doctrine is applicable. They have simply ignored the objections and the need to prove the privileges asserted. The trial court and the majority have graciously ignored these shortcomings in the parties' presentation of their discovery dispute. I cannot. I will not. I do not.

The procedure set out in the rules and case law is there for a reason. The procedure allows the trial court to make timely rulings based upon objections made and evidence that has been presented. The rulings will either allow or limit discovery. By this procedure, all parties know what the ruling of the trial court is and the basis for it. An aggrieved party may pursue an adverse ruling by appeal or, in an appropriate case, by petition for writ of mandamus.

The entire process is, however, dependent upon compliance with the basic procedures. The parties in this instance have so far departed from procedures required by the rules and this Court's prior opinions that I cannot determine, on this record, whether the trial court abused its discretion in denying the requested discovery, nor whether there is an adequate remedy at law. Accordingly, I would deny the petition on this basis. I would further expressly note that the denial is without prejudice to either party's pursuit of rulings on objections timely made and requiring proof of privileges timely asserted pursuant to the applicable rules of discovery, or to other relief as may be appropriate. I see nothing in the majority opinion that prevents the parties from revisiting these issues.

Finally, because the majority has addressed the merits of the offensive-use doctrine, I add that I do not agree that, on this record, the trial court did not abuse its discretion in failing to order the production of some of the documents sought to be protected; nor do I agree with the majority's determination that LWCC's remedy by appeal is adequate. To say more, at this juncture, would not be prudent, because it may have the effect of disclosing the contents of documents for which a privilege has been asserted but not proven.