**Opinion issued May 1, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01169-CV

———————————

**AQUARIUM ENVIRONMENTS, INC. AND R.J. BLUE, Appellants**

**V.**

**VICTOR S. ELGOHARY, Appellee**

---

**On Appeal from the 189th District Court**
**Harris County, Texas**
**Trial Court Case No. 2011-52458**

---

## MEMORANDUM OPINION

In this appeal after a jury verdict in a consumer services case, appellant contends the trial court erred by (1) submitting appellees' implied warranty DTPA claim to the jury; (2) excluding the testimony of two of appellant's fact witnesses;

(3) imposing post-verdict sanctions against appellant and its counsel; and (4) holding appellant's counsel in contempt of court and imposing contempt fines. We vacate the sanctions order, reverse and render a take nothing judgment on appellee's claim for sanctions, dismiss the complaints related to contempt, and affirm the remaining portions of the judgment.

## BACKGROUND

### Factual Background

Appellee, Victory Elgohary, designed and built a 320-gallon salt water aquarium for his home. The tank is four feet wide, four feet long, and once placed on its base cabinet, stands ten feet tall. Elgohary spent $30,000 building the aquarium, which was then stocked with tropical fish and coral.

Appellant, Aquarium Environments, Inc., which does business under the name The Fish Gallery, sells aquariums, supplies, fish, and coral. It also services aquariums for private individuals and businesses.

In June 2011, while Elgohary was on vacation, he received an electronic notification that his aquarium was overheating. Elgohary called his neighbor, Mitchell Randolph, and asked him to go next door and check on the aquarium. Randolph, who had a key to Elgohary's home, went next door and for the next two days communicated with Elgohary about the condition of the aquarium and the

2

fish.  After a couple of days, Randolph reported to Elgohary that most of the coral and fish had died.

Elgohary then called Aquarium Environments, from whom he had purchased supplies, fish, and coral in the past, about going to his home to remove the dead livestock, which included the coral and fish.  Elgohary talked to Jaime DePujadas, the general manager, and the two agreed that Aquarium Environments would send employees to Elgohary's home to perform a partial water change and remove the dead animals.  Elgohary and DePujadas agreed that Elgohary would pay the company for the time of its employees and the material used.

Aquarium Environments sent two employees, Chris Ordeneaux and Kenton Luff, to Elgohary's home.  Randolph met them there and let them in.  Randolph then watched as Ordeneaux and Luff removed the dead animals.  Randolph testified that Orderneaux removed the dead coral by pressing each piece of coral against the side of the acrylic tank for leverage and dragging it near the top with a long-handled scraper, and then reaching in to pull the coral from the top of the aquarium.

Randolph told Ordeneaux that he was concerned that this method of removing the coral would damage Elgohary's tank, so he offered to go get a longer ladder for Ordeneax.  Ordeneaux refused the offer, but Randolph went to get the

3

ladder anyway. Ordeneaux continued removing the coral by dragging it up the side of the tank.

When Elgohary returned from vacation, he noticed that the interior surfaces of his aquarium were scratched. He testified that he had caused one of the "dings" noticed on the tank's interior when he installed it, but that the long "scratches" were not there before Aquarium Environments serviced the tank.

**Procedural Background**

Elgohary filed suit alleging breach of contract, violations of the Texas Deceptive Trade Practices Act ["DTPA"], negligence, and breach of a settlement agreement pursuant to which Aquarium Environments would repair the aquarium in return for Elgohary not filing suit.

Before trial, Elgohary requested that the trial court sever his claim based on the alleged breach of a settlement agreement. The trial court also granted Elgohary's motion in limine to prevent two Aquarium Environments employees from testifying because they never appeared for depositions.

After a two-day trial, the trial court submitted the case to a jury. The jury found in favor of Elgohary on all three liability questions submitted: DTPA breach of warranty, breach of conract, and negligence. The jury awarded $6,538.39 in actual damages, plus attorney's fees of $15,000 and conditional attorney's fees on appeal of $5,000.

4

At Elgohary's request, the trial court rejoined and then nonsuited Elgohary's claim for breach of a settlement agreement. The trial court also signed a judgment in Elgohary's favor in accordance with the jury's verdict.

Elgohary then moved to amend the judgment to add sanctions against Aquarium Environments and its counsel, R.J. Blue. He attached evidence to his motion. The trial court held a hearing on January 11, 2013, but reset it for a later date when Aquarium Environments requested a full evidentiary hearing.

On March 1, 2013, the trial court held an evidentiary hearing on Elgohary's request for post-judgment sanctions, and later signed a sanctions order and an amended final judgment that included sanctions. At the sanctions hearing, the trial court also held Blue in contempt of court and assessed a fine of $500.

Aquarium Environments filed a motion to modify the final judgment, which the trial court did, signing an amended sanctions order and a second amended final judgment.

Aquarium Environments then sought to file a formal bill of exceptions. At a hearing related thereto, the trial court held Aquarium Environments' counsel, Blue, in contempt of court and assessed a fine of $1,000, which it later reduced to $200 after Blue spent time in custody.

This appeal followed.

## SUBMISSION OF DTPA CLAIM

In its first issue on appeal, Aquarium Environments contends "[t]he trial court erred by submitting Appellee's implied warranty DTPA claims to the jury." The jury charge contained three separate questions on Aquarium Environment's liability: the first question asked the jury to find whether Aquarium Environment violated the DTPA by failing to comply with a warranty to perform its services in a good and workmanlike manner; the second question asked whether it had breached its contract with Elgohary; and the third question asked whether Aquarium Environments was negligent. The jury was then instructed to award damages to Elgohary if it made an affirmative finding on any one of these three questions. The jury was then asked to award attorney's fees if it answered affirmatively to either the DTPA or breach of contract questions. The jury answered all three liability questions affirmatively, finding that Aquarium Environments failed to comply with a warranty under the DTPA, breached its contract with Elgohary, and was negligent in damaging Elgohary's aquarium.

If an independent ground fully supports the complained-of judgment, but an appellant assigns no error to that independent ground, then we must accept the validity of the unchallenged independent ground and, thus, any error in another ground challenged on appeal is harmless. *Britton v. Tex. Dep't of Criminal Justice*, 95 S.W.3d 676, 682 (Tex. App.—Houston [1st Dist.] 2002, no

6

pet.); *Harris v. Gen. Motors Corp.*, 924 S.W.2d 187, 188 (Tex. App.—San Antonio 1996, writ denied). The rule requiring an appellant to attack all independent grounds supporting a judgment has been applied in many contexts, including independent jury findings fully supporting a trial court's judgment. *See Britton*, 95 S.W.3d at 682 (stating that "appellant must attack each independent jury finding to obtain a reversal"). Although Aquarium Environments has challenged the jury's finding that it had failed to comply with an implied warranty under the DTPA, it has not asserted any challenge to the jury's separate affirmative finding to the breach of contract question. Because the jury answered both liability questions affirmatively, and because the jury charge was structured to allow the jury to award damages and attorney's fees based upon an affirmative finding to either of these liability questions, the trial court's award of actual damages in favor of Elgohary can be upheld by the jury's liability findings on either the breach of contract or warranty questions. Because Aquarium Environments does not challenge the jury's affirmative finding on the breach of contract question, which is an independent ground supporting liability and damages, we hold that any error by the trial court in submitting the DTPA implied warranty question is harmless.

Accordingly, we overrule Aquarium Environments' first issue on appeal.

## EXCLUSION OF TESTIMONY

In its second issue on appeal, Aquarium Environments contends the "trial court abused its discretion by excluding the testimony of Appellant's fact witnesses during trial." Specifically, Aquarium Environments contends that the trial court erred by refusing to permit Ordeneaux and Luff from testifying, and that such exclusion was, in effect, a death penalty sanction because those were the only two witnesses from Aquarium Environments who were present when the tank was cleaned. Elgohary responds that the exclusion of Ordeneaux and Luff was a proper discovery sanction as a result of their failure to appear for a deposition after being ordered to do so.

### *Factual Background*

On July 5, 2012, Ordeneaux and Luff failed to appear for their properly noticed depositions. Elgohary filed a Motion to Compel Deposition and for Sanctions, and on October 19, 2012, the trial court granted the motion to compel, but denied sanctions at that time. Instead, the trial court granted Aquarium Environments additional time to complete discovery in order to allow it another opportunity to produce Ordeneaux and Luff for deposition. The trial court warned Aquarium Environments that if it failed to produce Ordeneaux and Luff for deposition, the trial court would not permit them to testify at trial.

On November 21, 2012, shortly before trial, Elgohary filed a motion in limine to prohibit Aquarium Environments from addressing or mentioning in front of the jury any testimony by Ordeneaux and Luff because Aquarium Environments had still not made them available for depositions. The trial court granted Elgohary's motion, and the following exchange took place:

> [Trial Court]: I'm assuming they got some kind of excuse for [failing to appear at their initially noticed depositions]; but, Counsel, I think you left out one important fact in your review of the motions, that was when y'all came down here on that Motion for Sanctions and you asked for the continuance. I said, okay, I'll give you a continuance but since you had arranged for those gentlemen they were enough under your control to work out—that you had arranged to have them come there and they were former employees of your client. I made crystal clear to you that if you wanted them to testify you need to make them available for deposition; and I didn't put it on the Plaintiff to notice them again and have you arrange, you know, to try to get them again. They had done that once. You had said you were going to produce them and they didn't show. So I made crystal clear to you that if you wanted to bring them to testify at trial, you were going to have to produce them for deposition and that meant you were going to have to take the initiative and say, here they are; they're ready to be deposed; when do you want them; and if they didn't go forward then, that would be at their risk.
>
> [Defense Counsel]: You won't hear anything from me. You're right. I don't want to make the mistake of communicating this, but there's nothing I want you to interpret as me saying I can't control these guys.
>
> [Trial Court]: You clearly can because you brought them here to trial.
>
> [Defense Counsel]: Right.
>
> [Trial Court]: And I made clear to you that day that if you wanted them to testify at trial you needed to produce them for deposition. You did not do that so they are not going to testify at trial. If that

9

means we have to do this again, so be it; but I'm not going to let you ignore the specific ruling that I made about how to deal with this problem and then come in on the last day and have them testify without having made them available for deposition. It's not fair to the Plaintiff. They did what they could to get the deposition, and I'm not going to make them keep begging you to get these folks to produce them. I made clear after you had told me the first time that you thought they were going to be there and they just didn't show that you needed to get them there if you wanted them to testify; and I don't think there's any doubt in your mind that that was the effect of my ruling. It wasn't that the Plaintiff had to keep beating on you to get them.

\* \* \* \*

So you needed to take the initiative to reschedule them. I'm sorry, Mr. Blue, but that's fair and there's nothing unfair about what I'm doing. If you all want to reconsider you position on all this in light of that, fine; but I'm happy to let the Court of Appeals decide whether I am justified in imposing this sanction. You had witnesses under your control who did not show up. You never offered to make them available again; and in that case, I'm not going to let them testify.

[Defense Counsel]: It's totally fair. I just wanted to get a record of that and lacking consideration of a less severe sanction for the death penalty.

## Standard of Review and Applicable Law

We review a trial court's decision with regard to discovery matters for abuse of discretion. *Wigfall v. Tex. Dep't of Criminal Justice*, 137 S.W.3d 268, 272 (Tex. App.—Houston [1st Dist.] 2004, no pet.). A trial court abuses its discretion if a decision is so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Wheeler v. Methodist Hosp.*, 95 S.W.3d 628, 644 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

10

If a person designated to testify on behalf of a party fails to comply with proper discovery requests, a trial court may make an order prohibiting the disobedient party from introducing designated matters into evidence. TEX. R. CIV. P. 215.2(b)(4). Nevertheless, sanctions imposed under Rule 215 must be just under the circumstances. *In re Ford Motor Co*., 988 S.W.2d 714, 718 (Tex. 1998). We consider two factors when determining whether a trial court abused its discretion by ordering an unjust sanction. *Id.*; *In re Supportkids, Inc*., 124 S.W.3d 804, 807 (Tex. App.—Houston [1st Dist.] 2003, orig. proceeding). First, we determine whether a direct relationship exists between the offensive conduct and the sanctions. *Ford*, 988 S.W.2d at 718; *Supportkids*, 124 S.W.3d at 807. Second, we consider whether the trial court ordered an excessive sanction. *Ford*, 988 S.W.2d at 718; *Supportkids*, 124 S.W.3d at 807. A sanction imposed for discovery abuse should be no more severe than necessary to satisfy its legitimate purpose. *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991). A trial court must take into account the availability of less stringent sanctions and whether such sanctions would fully promote compliance. *Id*.

*Analysis*

In the present case, the sanctions ordered by the trial court were directly related to the offensive conduct, i.e., the failure to produce Ordeneaux and Luff for deposition. A just sanction must be directed against the abuse and toward

11

remedying the prejudice suffered by the innocent party. *Id.* Here, by prohibiting Ordeneaux and Luff from testifying at trial, the trial court directed its order at the abuse and prevented the prejudice that would have been caused by Elgohary's having to prepare for trial without the benefit of information he would have gained through his properly noticed depositions.

And, the trial court's order cannot be regarded as an excessive sanction. After Ordeneaux and Luff failed to appear for their properly noticed depositions, the trial court granted Elgohary's motion to compel their appearance, but also granted Aquarium Environments' additional discovery time so that it could make Ordeneaux and Luff available to Elgohary for deposition. As such, the record shows that the trial court did, in fact, attempt a lesser sanction before excluding Ordeneaux's and Luff's testimony at trial. Only when the trial court's order did not produce compliance by Aquarium Environments did the trial court take the next step in excluding Ordeneaux's and Luff's testimony at trial. As such, the trial court did not abuse its discretion in prohibiting Ordeneaux and Luff from testifying at trial. *See Adams v. Allstate County Mut. Ins. Co.*, 199 S.W.3d 509, 513–14 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (holding trial court's discovery sanction excluding witness's affidavit not an abuse of discretion after witness evaded service to avoid deposition).

Accordingly, we overrule Aquarium Environments' second issue on appeal.

12

# POST-JUDGMENT SANCTIONS

In their third issue on appeal, Aquarium Environments and its counsel, R.J. Blue, contend "the trial court abused its discretion by awarding post-judgment sanctions of $30,000 against Appellant and Appellant's counsel."

## *Factual Background*

After final judgment was signed, Elgohary filed its Second Motion for Sanctions seeking monetary sanctions against Aquarium Environments and its attorney R.J. Blue "for overall conduct in this case and also asks the court to modify the judgment this case to include and conform to the sanctions order." Specifically, Elgohary argued that the following pleadings were filed in violation of the above-referenced rules: (1) a motion for no evidence summary judgment; (2) a motion in opposition to mediation; (3) a first amended answer and counterclaim; (4) a motion for continuance; and (5) two motions to quash.

The trial court held a hearing on the motion for sanctions on January 11, 2013. At that hearing, Aquarium Environments asserted that it was entitled to a full evidentiary hearing on the motion for sanctions. The trial court agreed and a second hearing was held on March 1, 2003. At the hearing, Elgohary produced no witnesses, but instead relied on the evidence attached to his motion, which consisted mostly of pleadings filed in the case, emails and correspondence between the attorneys, and an affidavit on attorney's fees. Blue called Elgohary as a witness and explored with him Elgohary's

13

contentions that the pleadings were groundless. Blue also testified and explained why he filed each of the challenged pleadings and that he had "no bad faith motive" in the filings.

Elogohary's motion also asserted that he was entitled to sanctions pursuant to TEX. R. CIV. P. 215 for various discovery abuses attributable to Blue's conduct in the case. However, at the March 1, 2003 hearing, Elgohary withdrew his claim for attorney's fees sanctions under Rule 215 after Blue, citing *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167 (Tex. 1993),[1] argued that sanctions under Rule 215 were not available because Elgohary had not obtained a pretrial ruling on the alleged discovery abuse, of which he was aware before trial.

The trial court granted Elgohary's motion for sanctions and signed an order finding that the five pleadings were groundless and brought in bad faith. The trial court's order also stated, "The Court is of the firm conclusion that the series of pleadings and motions by Mr. Blue after January 2012[2] was for an improper purpose, namely to harass, delay, and increase the cost of litigation." The order also awarded Elgohary $30,000 in sanctions—$15,000 payable by Aquarium Environments and $15,000 payable by Blue, individually, plus contingent appellate attorney's fees from Blue in the event the sanctions

---

[1]    In *Remington Arms*, the relator argued that the trial court's post-trial sanctions against it were not recoverable under Rule 215 because the trial court could not impose discovery sanctions post-trial for pretrial discovery abuse. 850 S.W.2d at 170. The supreme court held that "the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct," but recognized that "if pretrial discovery abuse is not revealed until after the trial has begun, or even after trial, a party cannot be said to have waived a claim for sanctions." *Id.*

[2]    The record shows the significance of January 2012 as being the month in which Elgohary made a $6000 settlement demand on Aquarium Environments.

14

were unsuccessfully appealed. The sanctions were a global award and did not apportion any specific amount to any one of the five challenged filings.

These sanctions were then incorporated into the trial court's Second Amended Final Judgment.

### *Standard of Review*

We review a trial court's ruling on a motion for sanctions for an abuse of discretion. *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004); *Taylor v. Taylor*, 254 S.W.3d 527, 532 (Tex. App.—Houston [1st Dist.] 2008, no pet.). A trial court abuses its discretion when it acts without reference to any guiding rules and principles, and we reverse a trial court's ruling only if its action is arbitrary or unreasonable. *Cire*, 134 S.W.3d at 838–39 (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241, 242 (Tex. 1985)). A trial court does not abuse its discretion if it bases its decision on conflicting evidence and some evidence supports its decision. *In re Barber*, 982 S.W.2d 364, 366 (Tex. 1998) (orig. proceeding); *Glattly v. Air Starter Components, Inc.*, 332 S.W.3d 620, 642 (Tex. App.—Houston [1st Dist.] 2010, pet. denied). We make an independent inquiry of the entire record to determine whether the trial court abused its discretion in imposing the particular sanctions. *Scott Bader, Inc. v. Sandstone Prods., Inc.*, 248 S.W.3d 802, 812 (Tex. App.—Houston [1st Dist.] 2008, no pet.)

15

(citing *Daniel v. Kelley Oil Corp.*, 981 S.W.2d 230, 234 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)).

***Sanctions Under Chapter 10***

Civil Practice and Remedies Code section 10.001 provides that the signing of a pleading constitutes a certification by the signatory that to the signatory's best knowledge, information, and belief, formed after reasonable inquiry:

> (1) the pleading or motion is not being presented for any improper purpose, including to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) each claim, defense, or other legal contention in the pleading or motion is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) each allegation or other factual contention in the pleading or motion has evidentiary support or, for a specifically identified allegation or factual contention, is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) each denial in the pleading or motion of a factual contention is warranted on the evidence or, for a specifically identified denial, is reasonably based on a lack of information or belief.

TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (Vernon 2002); *see also Mattox v. Grimes Co. Comm'rs Court*, 305 S.W.3d 375, 386 (Tex. App.—Houston [14th Dist] 2010, pet. denied) ("Sanctions under chapter 10 of the Civil Practice and Remedies Code are authorized if the evidence establishes that (1) a pleading or motion was brought for an improper purpose, (2) there were no grounds for legal

16

arguments advanced, or (3) a factual allegation or denial lacked evidentiary support."). The trial court may impose sanctions on a person who has signed a pleading in violation of section 10.001. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.004(a) (Vernon 2002).

However, sanctions for alleged violations of chapter 10 known to the movants before trial are waived if a hearing and ruling are not secured pretrial. *See Finlay v. Olive*, 77 S.W.3d 520, 525 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Remington Arms Co. v. Caldwell,* 850 S.W.2d 167, 170 (Tex. 1993)). Because that was not done in this case, the trial court could not impose sanctions under Chapter 10.

### *Sanctions Under Rule 13*

Rule 13 authorizes the imposition of sanctions against an attorney, a represented party, or both, who file pleadings that are (1) groundless and brought in bad faith or (2) groundless and brought to harass. TEX. R. CIV. P. 13. This is a two-part test, requiring a party moving for rule 13 sanctions to demonstrate both that the opposing party's filings are groundless and then to also show that the pleadings were filed either in bad faith or for the purposes of harassment. *R.M. Dudley Constr. Co. v. Dawson*, 258 S .W.3d 694, 707 (Tex. App.—Waco 2008, pet. denied). "Groundless" for purposes of rule 13 means no basis in law or fact and not warranted by good faith argument for the extension, modification, or

reversal of existing law. TEX. R. CIV. P. 13. Bad faith is not simply bad judgment or negligence; rather, it is the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes. *Parker v. Walton*, 233 S.W.3d 535, 540 (Tex. App.—Houston [14th Dist.] 2007, no pet). Improper motive is an essential element of bad faith. *Id*. Harassment means that the pleading was intended to annoy, alarm, and abuse another person. *Id.*

Courts must presume that pleadings and motions are filed in good faith, and sanctions should not be imposed "except for good cause, the particulars of which must be stated in the sanction order." TEX. R. CIV. P. 13. The party moving for sanctions bears the burden of overcoming the presumption that pleadings are filed in good faith. *Parker*, 233 S.W.3d at 540.

When determining whether rule 13 sanctions are proper, the trial court must examine the facts available to the litigant and the circumstances existing when the litigant filed the pleading. *Harrison v. Harrison*, 363 S.W.3d 859, 863–64 (Tex. App.—Houston [14th Dist.] 2012, no pet.). The trial court must provide notice and hold an evidentiary hearing "to make the necessary factual determinations about the motives and credibility of the person signing the groundless petition." *Parker*, 233 S.W.3d at 539–40 (*quoting Aldine Indep. Sch. Dist. v. Baty*, 946 S.W.2d 851, 852 (Tex. App.—Houston [14th Dist.] 1997, no writ)). Without such a hearing, the trial court has no evidence before it to determine that a pleading was filed in bad

18

faith or to harass. *Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 669 (Tex. App.—Corpus Christi 2004, no pet.).

We recognize that courts have not generally applied *Remington Arms* to Rule 13 sanctions because "[r]ule 13 sanctions are unlike discovery sanctions in that they directly concern the merits of the underlying action[,]" and "because the court must first decide whether a party's pleading is groundless." *Jobe v. Lapidus*, 874 S.W.2d 764, 769 (Tex. App.—Dallas 1994, writ denied) (McGarry, J., dissenting). Indeed, most post-judgment rule 13 sanctions involve sanctioning the losing party for filing a claim or defense with no basis in law or fact after that claim has been resolved against the sanctioned party on the merits.

Here, however, at least two of the pleadings complained of—the motions to quash and the motion for continuance—were based on discovery abuse, of which Elgohary was aware before trial.

Regarding the motions to quash, the trial court's order stated:

Defendant Aquarium Environments' motions to quash were groundless . . . and brought in bad faith intended to cause unnecessary delay, needlessly increase the costs of litigation, and harass Elgohary. Specifically, the court finds that Blue's continued refusal to communicate with opposing counsel in getting depositions scheduled and have parties that were under Blue's and Aquarium Environments' control to appear for properly noticed depositions caused Elgohary to legitimately schedule the requested depositions unilaterally. The court further finds that Blue's filing and signing of these motions to quash were groundless and brought in bad faith and was intended to cause unnecessary delay and increase the costs of litigation for Elgohary, since Aquarium Environments and Blue made no attempt to

19

contact Elgohary to reschedule depositions or state a reasonable time and place in the motion with which the persons scheduled to appear would comply.

Regarding the motion for continuance, the trial court's order stated:

This Court's amended docket control order was entered on September 24, 2012 and gave Aquarium Environments additional discovery time as well as the opportunity to comply with the court's directive regarding Elgohary's motion to compel Ordeneaux's deposition. Aquarium Environments and Blue took no action to fulfill this court's directive to provide dates to Elgohary at which Ordeneaux might appear. Yet on the day of the trial Ordeneaux was present in this court and ready to testify, despite this court's specific instruction that Ordeneaux was required to present himself for a deposition if he was to testify at trial. Aquarium Environments also made no effort in obtaining any further discovery in the addition six weeks that the discovery period was reopened and for which they prayed that the court grant a continuance back on August 3, 2012. Hence, it is clear from Aquarium Environments' and Blue's conduct that the motion for continuance was groundless and presented for an improper purpose, mainly to harass, cause unnecessary delay and needless increase in the cost of litigation to Elgohary.

As made clear from the trial court's order, the basis for finding the motions to quash and the motion for continuance groundless and in bad faith was Blue's and Aquarium Environments' conduct during the discovery process. The rationale behind *Remington Arms* (applying Rule 215) and *Findlay v. Olive* (applying Chapter 10) is equally applicable in this situation, i.e., discovery disputes of which the movant is aware pre-trial should be resolved pre-trial.[3] The failure to do so

---

[3] Indeed, the dispute over Luff's and Ordeneaux's failure to appear for a deposition was resolved at trial when their testimony was prohibited. Elgohary received all the relief he requested in connection with this discovery abuse.

20

results in a waiver of the right to seek sanctions based on that discovery abuse post-trial.

Having decided that two of the five pleadings challenged will not support an award of post-trial sanctions, we consider what effect, if any, that has on the remaining portions of the sanctions order.

In *Graves v. Tomlinson*, the trial court awarded a global sanction of $250,000 against the appellant "for all of Graves' collective misconduct during the divorce proceedings." 329 S.W.3d 128, 150 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). On appeal, the court noted that it could not tell which portion of the global post-verdict sanction was attributable to discovery abuse, which was waived, thus it could not determine whether the sanctions amount related directly to sanctionable conduct. *Id.* at 151–152. As such, the sanction could not be upheld.

The same is true in this case. Because Elgohary did not show how much he was damaged by non-sanctionable conduct, i.e., discovery abuse, we cannot tell whether the amount of the sanctions awarded is directly related to any sanctionable conduct.

Accordingly, we sustain Aquarium Environments' and Blue's third issue on appeal. We vacate the sanctions order, reverse the portion of the final judgment that relates to sanctions, and render judgment that Elgohary take nothing on his

21

post-verdict sanctions. *See Christus Health Gulf Coast v. Carswell*, No. 01-11-00292-CV, 2013 WL 4602388, *26 (Tex. App.—Houston [1st Dist.] Aug. 29, 2013, no pet.) (vacating sanctions rather than reversing and remanding when record does not show why the trial court chose to impose the amount of sanctions it did).

## CONTEMPT OF COURT

In its fourth and fifth issues on appeal, Aquarium Environments contends the trial court abused its discretion by holding its counsel in contempt and assessing fines against him in two separate post-judgment hearings. However, a contempt judgment is reviewable only via a petition for writ of habeas corpus (if the contemnor is confined) or a petition for writ of mandamus (if no confinement is involved). *Cadle Co. v. Lobingier*, 50 S.W.3d 662, 671 (Tex. App.—Fort Worth 2001, pet. denied) (op. on reh'g) (*citing In re Long*, 984 S.W.2d 623, 625 (Tex. 1999) (op. on reh'g)). Decisions in contempt proceedings cannot be reviewed on direct appeal because contempt orders are not appealable, even when appealed along with a judgment that is appealable, as here. *Id.* (*citing Metzger v. Sebek*, 892 S.W.2d 20, 55 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also In re Office of Att'y Gen. of Tex.*, 215 S.W.3d 913, 915 (Tex. App.—Fort Worth 2007, orig. proceeding) (explaining why contempt judgments are not appealable and must be attacked by petition for writ of habeas corpus or for writ of mandamus).

We cannot reach Aquarium Environments' contempt-based complaints in this direct appeal, and we dismiss its fourth and fifth issues for want of jurisdiction.

## CONCLUSION

We dismiss appellants' complaints regarding contempt for want of jurisdiction. We vacate the trial court's sanctions order, reverse the portion of the judgment awarding post-judgment sanctions, and render judgment that appellant take nothing on his claim for post-judgment sanctions. We affirm the remainder of the judgment.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.