ACCEPTED
13-14-00516-CV
THIRTEENTH COURT OF APPEAL
CORPUS CHRISTI, TEXAS
3/4/2015 5:56:21 PM
DORIAN RAMIREZ
CLERK

## NO. 13-14-00516-CV

# IN THE COURT OF APPEALS FOR THE THIRTEENTH DISTRICT OF TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
3/4/2015 5:56:21 PM
DORIAN E. RAMIREZ
Clerk

## PATRICK HLAVATY AND JEFF STRNADEL,
*Appellants and Cross-Appellees,*

v.

## COMMERCIAL STATE BANK OF EL CAMPO, TEXAS, INC.,
*Appellee and Cross-Appellant.*

## CROSS-APPELLANT COMMERCIAL STATE BANK OF EL CAMPO, TEXAS, INC.'S APPELLANT'S BRIEF

From the District Court of Wharton County, Texas,
329th Judicial District; Trial Court Case No. 44081

DAWN S. HOLIDAY
TBA No. 24046090
MIA B. LORICK
TBA No. 24091415
Roberts Markel Weinberg Butler Hailey PC
2800 Post Oak Blvd, 57th Floor
Houston, TX 77056
Tel: (713) 840-1666
Fax: (713) 840-9404
dholiday@rmwbhlaw.com
mlorick@rmwbhlaw.com
ATTORNEYS FOR APPELLEE / CROSS-APPELLANT,
COMMERCIAL STATE BANK OF EL CAMPO, TEXAS, INC.

## ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

| Appellants / Cross-Appellees | Trial Court Counsel | Appellate Counsel |
|---|---|---|
| Patrick Hlavaty and Jeff Strnadel | Howard H. Singleton Singleton Law Firm 109 East Milam Street Wharton, TX 77488 Tel: (979) 532-9800 Fax: (979) 532-9805 singletonlaw@sbcglobal.net | Walter James Kronzer, III Walter James Kronzer, III, P.C. 3000 Weslayan, Suite 247 Houston, TX 77027 Tel: (713) 622-5756 Fax: (713) 622-5445 wkronzer@kronzer.com

Howard H. Singleton Singleton Law Firm 109 East Milam Street Wharton, TX 77488 Tel: (979) 532-9800 Fax: (979) 532-9805 singletonlaw@sbcglobal.net |

| Cross-Appellant / Appellee | Trial Court Counsel | Appellate Counsel |
|---|---|---|
| Commercial State Bank of El Campo, Texas, Inc. | Gregg S. Weinberg Dawn S. Holiday Chase A. Evans Roberts Markel Weinberg Butler Hailey PC 2800 Post Oak Blvd., 57th Fl. Houston, TX 77056 Tel: (713) 840-1666 Fax: (713) 840-9404 gweingerg@rmwbhlaw.com dholiday@rmwbhlaw.com cevans@rmwbhlaw.com | Dawn S. Holiday Mia B. Lorick Roberts Markel Weinberg Butler Hailey PC 2800 Post Oak Blvd, 57th Fl Houston, TX 77056 Tel: (713) 840-1666 Fax: (713) 840-9404 dholiday@rmwbhlaw.com mlorick@rmwbhlaw.com |

# TABLE OF CONTENTS

IDENTITY OF PARTIES & COUNSEL. ……………………………………ii

TABLE OF CONTENTS ..…………………………………………………iii

TABLE OF AUTHORITIES…..………………………………………….v

RECORD REFERENCES ……………………………………..…vii

STATEMENT OF THE CASE…………………………………………viii

ISSUES PRESENTED ......................................................................ix

STATEMENT REGARDING ORAL ARGUMENT….……………………x

STATEMENT OF FACTS .. …………………………………………1

PROCEDURAL HISTORY…..……………………………………7

SUMMARY OF THE ARGUMENT….…………………………………..9

ARGUMENTS AND AUTHORITIES ………………………………10

    I.    The trial court was without jurisdiction to issue an order of sanctions six months after it lost plenary power……………10

        A.    Standard of Review ………………………………10

        B.    CSB's nonsuit allowed the trial court a reasonable amount of time to rule on collateral matters, nothing more. …………………………………………11

        C.    Three and a half years is in no way a reasonable amount of time. ………………………………13

D. The trial court lost plenary power on December 16, 2013, and therefore, was without jurisdiction to enter an order of sanctions on June 11, 2014. ...................15

II. If the trial court did have jurisdiction—which it did not—it abused its discretion in entering the order of sanctions .....18

A. Standard of review..................................................18

B. The trial court abused its discretion by failing to provide a basis for its order of sanctions. ...............................18

C. The trial court abused its discretion by failing to verify the attorney's fees. ..............................................20

D. The trial court abused its discretion by entering an order of sanctions based on alleged non-compliance with vacated orders. ...................................................21

CONCLUSION ..............................................................23

PRAYER........................................................................23

CERTIFICATE OF COMPLIANCE .. ...............................25

CERTIFICATE OF SERVICE. ......................................25

APPENDIX ............................. ......................................26

iv

# TABLE OF AUTHORITIES

**Cases**

*Cook v. Cameron,*
    733 S.W.2d 137, 140 (Tex. 1987)... ....................................................15

*Frost Nat'l Bank v. Fernandez,*
    315 S.W.3d 494, 502 (Tex. 2010)... ..................................................10

*Hawkins v. Estate of Volkmann,*
    898 S.W.2d 334, 346 (Tex. App.—San Antonio 1994, writ denied).. .18

*In re Bates,*
    429 S.W.3d 47 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.)......15

*In re Bennett,*
    960 S.W.2d 35, 38 (Tex. 1997). .........................................................12

*In re Ford Motor Co.,*
    988 S.W.2d 714, 718 (Tex. 1998). .....................................................18

*In re Fuentes,*
    960 S.W.2d 261, 262 (Tex. App.—Corpus Christi 1997, no writ).. ....15

*In re Metro. Lloyds Ins. Co.,*
    No. 05-08-01712-CV, 2009 Tex. App. LEXIS 1764 at *7 (Tex. App.—Dallas, March 13, 2009). .................................................................13

*Scott & White Mem'l Hosp. v. Schexnider,*
    940 S.W.2d 594, 596 (Tex. 1996)... ..................................................16

*Smalley v. Smalley,*
    436 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2014, no pet.)... ................................................................................................15

*Spohn Hosp. v. Mayer,*
    104 S.W.3d 878, 882 (Tex. 2003)... ..................................................18

*Tex. Comm'n on Envtl. Quality v. Bonser-Lain,*
   438 S.W.3d 887, 891 (Tex. App.—Austin 2014, no pet.)... .................10

*Texas Ass'n of Bus. v. Texas Air Control Bd.,*
   852 S.W.2d 440, 443 (Tex. 1993)... ....................................................11

*Tourneau Houston, Inc. v. Harris County Appraisal Dist.,*
   24 S.W.3d 907, 910 (Tex. App.—Houston [1st Dist.] 2000, no pet.)..11

*TransAmerican Natural Gas Corp. v. Powell,*
   811 S.W.2d 913, 917 (Tex. 1991). .............................................. 18, 19

*Univ. of Texas Med. Branch at Galveston v. Estate of Blackmon,*
   195 S.W.3d 98, 101 (Tex. 2006). ................................................. 11, 12

## **Statutes**

Tex. R. Civ. P. 13... .............................................................................19

Tex. R. Civ. P. 162. ........................................................................ 11, 12

# RECORD REFERENCES

Citations in this Cross-Appellant's Brief to the Parties are as follows:

Cross-Appellant Commercial State Bank of El Campo, Texas, Inc. will be referred to as "CSB."

Cross-Appellee Patrick Hlavaty will be referred to as "Hlavaty."

Cross-Appellee Jeff Strnadel will be referred to as "Strnadel."


Citations in this Cross-Appellant's Brief to the record are as follows:

CR – Clerk's Record designated by Commercial State Bank of El Campo, Texas, Inc. and filed in this Court on 10/27/2014 (i.e. CR [page]; e.g. CR 1)

# STATEMENT OF THE CASE

*Nature of the case:*  This appeal arises from an order of sanctions entered against CSB by the trial court ***after*** the trial court determined it lost plenary jurisdiction as to all parties in this case.

*Trial Court Disposition:*  Hlavaty and Strnadel filed a Motion to Compel and Sanctions against CSB. (CR 308). On June 3, 2014, the trial court entered an order stating that it had plenary lost jurisdiction as to all parties in this case as of December 15, 2013 and that it had no further authority to act. (CR 784). But, on June 11, 2014, the trial court granted Hlavaty and Strnadel's motion for sanctions. (CR 788). CSB filed a Motion to Vacate the Order for Sanctions for lack of jurisdiction. (CR 791). However, on August 29, 2014, the trial court denied CSB's Motion to Vacate the Order for Sanctions. (CR 853).

*Trial Court:*  329th Judicial District of Wharton County, Texas.

## ISSUES PRESENTED

1. Whether the trial court had jurisdiction to enter an order of sanctions on June 11, 2014, which is six months after the trial court declared that it lost plenary jurisdiction as to all parties as of December 15, 2013.

2. If the trial court did have jurisdiction to enter the June 11, 2014 order of sanctions—which it did not—whether the trial court abused its discretion in entering the order of sanctions without sufficient basis.

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Appellate Procedure Rule 52.8(b)(4), Cross-Appellant respectfully requests oral argument on belief it will materially aid the Court in determination of the legal and procedural issues presented for review.

## STATEMENT OF FACTS

This case was brought by CSB against nine defendants following internal investigations that revealed fraudulent conduct on behalf of the defendants.[1] CSB nonsuited its claims against all defendants; however, the trial court entered an order of sanctions six months after it lost plenary jurisdiction.[2] The entry of the order of sanctions post expiration of the trial court's plenary jurisdiction is the subject of this appeal. CSB will timely respond to all issues raised by Appellant in challenging the trial court's loss of plenary jurisdiction in CSB's Appellee's Brief on issues presented by Appellant.

## 1. CSB Generally.

This is a case brought by CSB for damages arising from fraud and dishonesty committed by former bank employees.[3] CSB has been in the business of banking since February 7, 1921.[4] One of the services it makes available to its customers is that of interim construction lending, both residential and commercial.[5] CSB relies on mortgage lenders,

---

[1] CR 23.
[2] CR 559; CR 788.
[3] CR 23-43.
[4] CR 25.
[5] *Id.*

mortgage bankers, mortgage companies, realtors, builders, and developers as potential sources of its interim loan business.[6]

Often times the process of obtaining an interim loan begins through a mortgage broker.[7] The mortgage broker obtains permanent financing for individuals who seek to either acquire raw land to build their own new structure, or acquire an existing structure and make improvements on it.[8] Whether the transaction goes forward, depends upon the buyer obtaining permanent financing.[9] At this point, the mortgage broker will request a "financial package" from the buyer, consisting of things such as tax returns, bank statements, financial statements, and any appraisals that the buyer may have in his possession.[10] A credit inquiry will also be made by the loan processor to determine credit scores.[11]

After assembling the financial package, the mortgage broker then shops the permanent loan to a permanent lender, by submitting the

---

[6] *Id.*
[7] *Id.*
[8] CR 25.
[9] *Id.*
[10] CR 26.
[11] *Id.*

financial package to the permanent lender for examination.[12] Once a permanent lender has committed to make a permanent loan, the mortgage broker then contacts a lender that specializes in interim financing.[13] A loan committee then decides whether to make the loan to the buyer.[14]

## 2. The fraudulent acts of CSB's employees give rise to this suit.

### A. Hlavaty

On or about February 17, 1987, Patrick Hlavaty ("Hlavaty") began employment with CSB as vice president in the mortgage lending department.[15] He was responsible for marketing the bank's services as well as evaluating and recommending mortgage lending and real estate loans to the loan committee.[16] On October 31, 2007, Hlavaty was asked to resign from his position because internal investigations revealed dishonesty, fraud, self-dealing, and numerous breaches of fiduciary duties owed to CSB.[17] The acts that led to Hlavaty's requested resignation were falsifying information, failing to disclose his interest in

---

[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] CR 27.
[16] *Id.*
[17] *Id.*

certain corporations, and accepting kickbacks on loans made to various customers.[18]

Hlavaty's bad acts gave rise to this lawsuit.[19] Specifically, a pre-suit internal investigation into the fraudulent activities of Hlavaty was conducted at the request for CSB's counsel.[20] The investigation was conducted by Moritz & Associates, Inc. and a report of the findings of the investigations was provided to CSB's counsel and dated November 2, 2007, known and referred to in this litigation as the "Moritz Report".[21] The Moritz Report noted that Hlavaty signed a yearly Code of Ethics and Annual Declaration of Personal Circumstances document with CSB that, among other things, neither he nor any family member (1) had any business connections with CSB or conducted any personal business activities that could conflict with CSB; (2) had received income for services performed from sources other than CSB; (3) or was licensed to sell real estate and had received money from such transaction within the last 12 months.[22]

---

[18] CR 32-37.
[19] CR 354.
[20] Id.
[21] Id.
[22] CR  355.

Hlavaty admitted to the investigator that he lied about him and his wife's (Helen Hlavaty) involvement in a home building business relationship between Helen Hlavaty Homes and Waldron Development (a long-time customer of CSB).[23]  The Moritz Report stated:

> . . . At this point, Mr. Hlavaty admitted he had lied about involvement with Waldron Development and stated "I am the front man for Waldron.  I am the front man through Helen Hlavaty Homes for Waldron Development.  Helen knows Waldron but that's all, she doesn't do anything.  I am the one who does it.  I get a commission from Waldron on the transactions."  Investigator Moritz showed Mr. Hlavaty an email from Mr. Waldron telling Mr. Hlavaty he was getting him into Westbound Bank as no other bank would take Helen Hlavaty Homes checks.  Mr. Hlavaty read it and then repeated he did get a commission.  Mr. Hlavaty stated "If you got it off of my computer, I can't deny it.  I thought you did but I didn't know and I can't deny anything you get off my computer."  Mr. Hlavaty was shown the bank draws discovered in the computer forensic examination and after examining them, he stated he had signed the draws.  He stated "Now I know I shouldn't have done this.  I didn't think it was wrong before but I do now." . . .[24]
>
> ***
>
> Mr. Hlavaty stated that Mr. Waldron was sent to CSB by 1st Bank Mortgage a "long time ago." He stated he was the "front for loans for Waldron Development' and would get loans for Waldron Development.  Mr. Hlavaty stated he ran Helen Hlavaty Homes out of the CSB office and used their computers and phones.[25]

---

[23] CR 359.

[24] *Id.*

[25] CR 360.

## B.    Strnadel

Jeff Strnadel ("Strnadel") was also an employee of CSB.[26] Part of Strnadel's duties and responsibilities was to make physical site inspections of construction sites to determine whether improvements had been made, whether construction had been made in a good and workmanlike manner, and whether payment on requested draws should be authorized.[27] Strnadel failed to inspect job sites and accurately report his findings to his superiors.[28] CSB incurred damages because of Strnadel's inability to complete his job duties.[29]

As early as 2007, Strnadel's bad acts were being investigated by the Secret Service.[30] In a fidelity claim submitted by CSB regarding "forgery and alteration of documents used for loan approval and presentation" committed by Hlavaty and Strnadel, it was noted:

> . . . Mr. Strnadel performed certain onsite inspections  of one property in which the work had not been completed, but the draws approved based upon inspections.  Mr. Strnadle did not have an explanation nor could he justify this actions.

---

[26] CR 39.
[27] CR 39.
[28] *Id.*
[29] *Id.*
[30] CR 777-778.

Losses have also been occurred due to the presentation of fraudulent earnest money contracts, by certain builders under investigation.

As indicated above the Secret Service has an ongoing investigation that has been able to develop the case with subpoenas into other Banks and entities. The Bank is in contact with Agent Jonathan Breedlove 713-868-2299 who has advised that there is indication that there were monetary gains received by the officers involved. Mr. Breedlove is unable to give us specifics at this time; however, he has advised that as soon as he is at liberty to provide information, he will do so. Mr. Breedlove has also advised that if the Insurance Company would need to speak to him regarding this information, he is available at the phone number above. . . .[31]

CSB brought suit in 2009 against Hlavaty, Strnadel, and seven other defendants alleging fraud, fraud by nondisclosure, negligent failure to disclose, breach of fiduciary duty, breach of the duty of loyalty, unjust enrichment, and negligence.[32]

## PROCEDURAL HISTORY

On October 23, 2009, CSB filed its Original Petition against nine defendants, including Patrick Hlavaty and Jeff Strnadel.[33] The Defendants filed an Original Answer on November 20, 2009, and

---

[31] *Id.*
[32] CR 23-43.
[33] CR 23.

7

subsequently filed an Amended Answer on December 2, 2009.[34] Defendants Hlavaty and Strnadel filed a Motion for Rule 13 Sanctions on March 17, 2010.[35] On June 23, 2010, CSB filed a notice of nonsuit as to defendants Hlavaty and Strnadel.[36] The trial court signed the dismissal order as to Hlavaty and Strnadel on June 24, 2010.[37] Thereafter, on September 1, 2010, CSB nonsuited the remainder of the defendants in the lawsuit.[38] However, because an objection was made by Hlavaty and Strnadel, as to the form of the dismissal order relating to other defendants, the proposed order of non-suit was not signed by the trial court at that time.

On November 15, 2013, the trial court signed the final order of nonsuit as to the last two remaining defendants.[39] On April 8, 2014, CSB filed its Motion to Dismiss and Vacate Orders.[40] The trial court granted CSB's motion and dismissed the case, specifically stating that the trial court's "plenary jurisdiction as to all parties in this case ended

---

[34] CR 47-49.
[35] CR 56-59.
[36] CR 100.
[37] CR 100.
[38] CR 126.
[39] CR 559.
[40] CR 561.

on December 15, 2013."[41] Seven months after all defendants had been nonsuited and six months after the trial court declared that it lost plenary jurisdiction, on June 11, 2014, the trial court issued an order of sanctions against CSB.[42] CSB filed a Motion to Vacate the Order of Sanctions, which the trial court denied.[43] This appeal followed.

## SUMMARY OF THE ARGUMENT

The trial court did not have jurisdiction to enter an order of sanctions against CSB on June 11, 2014 after the trial court determined that it lost plenary jurisdiction as of December 15, 2013 and that no further proceedings in this case would be heard.

The trial court should have ruled on Hlavaty and Strnadel's pending motions for sanctions within a reasonable amount of time after CSB's final nonsuit was filed on September 1, 2010. Instead, the trial court waited three years and entered a ruling after it lost jurisdiction. Specifically, the trial court entered a final order of nonsuit in November of 2013; therefore, the trial court lost its plenary power in December of 2013—30 days after the final order, which the trial court itself determined. However, six months after the court lost jurisdiction, it

[41] CR 785-86.
[42] CR 788.
[43] CR 791-94.

9

entered the order of sanctions. As such, the trial court was without subject matter jurisdiction to enter such order as a matter of law. The trial court erred in refusing to vacate the order of sanctions entered after it lost plenary jurisdiction to enter such order.

Even if the trial court had jurisdiction—which it did not—the court abused its discretion in entering the order of sanctions because it did not provide sufficient facts to show a direct relationship between the alleged conduct and the sanctions imposed.

As a result, the order of sanctions should be set aside for want of jurisdiction; or, in the alternative, the order of sanctions should be vacated for an abuse of discretion.

## ARGUMENTS & AUTHORITIES

### I. The trial court was without jurisdiction to issue an order of sanctions six months after it lost plenary power.

#### A. *Standard of Review*

Whether a trial court had subject matter jurisdiction is a question of law that the appellate court reviews de novo.[44] Subject matter

---

[44] *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 502 (Tex. 2010); *Tex. Comm'n on Envtl. Quality v. Bonser-Lain*, 438 S.W.3d 887, 891 (Tex. App.—Austin 2014, no pet.).

jurisdiction is essential for a court to have authority to decide a case.[45] It is never presumed.[46] It cannot be waived.[47] Therefore, a lack of subject matter jurisdiction is a fundamental error; and, it can be raised by the appellate court or by a party for the first time on appeal.[48]

### B. CSB's nonsuit allowed the trial court a reasonable amount of time to rule on collateral matters, nothing more.

Pursuant to Texas Rule of Civil Procedure 162, "at any time before the plaintiff has introduced all of his evidence, other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit."[49] If there are no pending affirmative claims before the court at the time a nonsuit is filed, the nonsuit extinguishes the case or controversy from the moment the motion is filed.[50] While the date the trial court signs the nonsuit is relevant to determine when the court's plenary power expires, the nonsuit is effective when filed.[51]

---

[45] *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993).

[46] *Id.*

[47] *Id.*

[48] *Tourneau Houston, Inc. v. Harris County Appraisal Dist.*, 24 S.W.3d 907, 910 (Tex. App.—Houston [1st Dist.] 2000, no pet.) (citing *Fed. Underwriters Exch. v. Pugh*, 174 S.W.2d 598, 600 (Tex. 1943)).

[49] Tex. R. Civ. P. 162.

[50] *Univ. of Texas Med. Branch at Galveston v. Estate of Blackmon*, 195 S.W.3d 98, 101 (Tex. 2006) (citing *Shadowbrook Apts. v. Abu-Ahmad*, 783 S.W.2d 210, 211 (Tex. 1990); *see also Greenberg v. Brookshire*, 640 S.W.2d 870, 872 (Tex. 1982)).

[51] *In re Bennett*, 960 S.W.2d 35, 38 (Tex. 1997).

Rule 162 provides that a plaintiff's nonsuit shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief and shall have no effect on a motion for sanctions or attorney's fees pending at the time of the nonsuit.[52] The trial court has discretion to defer signing an order of dismissal so that it can "allow a reasonable amount of time" for holding hearings on the matters which are "collateral to the merits of the underlying case."[53] However, even though Rule 162 permits motions for sanctions and attorney's fees to be heard, it must be done within a reasonable amount of time and does not preclude the nonsuit's effect of rendering the merits of the case moot.[54]

Here, CSB filed a nonsuit dismissing Hlavaty and Strnadel from the underlying matter on June 23, 2010; and, the court entered an order of nonsuit.[55] On September 1, 2010, CSB filed its final nonsuit as to the remaining defendants.[56] At the time of the final nonsuit on September 1, 2010, Hlavaty and Strnadel did not have pending affirmative claims before the court. Hlavaty and Strnadel did however have pending motions for sanctions and attorney's fees—collateral matters. While

---

[52] Tex. R. Civ. P. 162.
[53] *In re Bennett*, 960 S.W.2d at 38-39.
[54] *Univ. of Texas*, 195 S.W.3d at 101.
[55] CR 96-101.
[56] CR 126-129.

12

Hlavaty and Strnadel will undoubtedly attempt to assert that they did in fact have affirmative claims based on their filing of motions entitled "counterclaims,"[57] their motions are nothing more than a request for attorney's fees—making them collateral matters, rather than affirmative claims.[58]

Because collateral matters were the only motions pending at the time of CSB's final nonsuit, the trial court, pursuant to Rule 162, only had a reasonable amount of time to resolve the pending motions—not three and half years to twiddle its thumbs and make a ruling when it got around to it. The trial court clearly failed to resolve the collateral matters within a reasonable amount of time and therefore, was without jurisdiction when it entered an order of sanctions over three years later.

### C.   Three and a half years is in no way a reasonable amount of time.

The trial court entered an order on Hlavaty and Strnadel's pending motions for sanctions over three years after the final notice of

---

[57] CR 61-66.

[58] *In re Metro. Lloyds Ins. Co.*, No. 05-08-01712-CV, 2009 Tex. App. LEXIS 1764 at *7 (Tex. App.—Dallas, March 13, 2009) (holding that when pleading an affirmative claim the pleader must give every element of a cause of action so that the opposing party may prepare a defense, and  in determining whether a cause of action is pled, you look to the substance of the pleading and not merely its title.)

nonsuit was filed by CSB.[59] This is certainly not what the Texas Supreme Court meant when it allowed trial courts a reasonable amount of time to hold hearings and resolve collateral matters. The trial court's blatant disregard for timely resolving this case should not be affirmed or tolerated, as it is not in the best interest of an efficient judicial system. To hold otherwise would set the precedent that upon the filing of a nonsuit and dismissal of a case, a judge's power to rule on collateral matters continues for eternity—allowing for cases and controversies to continue forever. Such result is absurd.

In addition to the trial court's unreasonable delay in ruling on pending motions, Hlavaty and Strnadel also failed to take any action with regard to their motion for sanctions. Hlavaty and Strnadel failed to do anything that could be reasonably construed as them pursuing sanctions within a reasonable amount of time after the nonsuit as to all defendants was filed. As such, the trial court was without jurisdiction when it entered the order of sanctions, *sua sponte*, over three years after the final notice of nonsuit. And, this Court should decline to reward such inaction and unreasonable delay.

---

[59] CR 788.

***D.*** ***The trial court lost plenary power on December 16,*** ***2013, and therefore, was without jurisdiction to enter*** ***an order of sanctions on June 11, 2014.***

Even if there is an argument to be made that three years is a reasonable amount of time—which no such argument exists—the trial court lost its plenary power on December 16, 2013.

Once a trial court's plenary power ends, it loses subject matter jurisdiction.[60] A judgment is void when it is apparent that the court rendering judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter judgment, or no capacity to act as a court.[61] Therefore, orders issued outside of a trial court's plenary power are void because a court cannot act once it has no jurisdiction to enter judgment.[62] A void order is null within itself and its nullity cannot be waived.[63] Although a trial court is free to "impose sanctions while it retains plenary jurisdiction," after plenary

---

[60] *In re Bates*, 429 S.W.3d 47 (Tex. App.—Houston [1st Dist.] 2014, no pet. h.); *Smalley v. Smalley*, 436 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2014, no pet.).

[61] *Cook v. Cameron*, 733 S.W.2d 137, 140 (Tex. 1987) (quoting *Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985).

[62] *In re Fuentes*, 960 S.W.2d 261, 262 (Tex. App.—Corpus Christi 1997, no writ).

[63] *Id.*

jurisdiction has expired a trial court may not sanction counsel for pre-judgment conduct.[64]

In this case, the trial court signed a final order of nonsuit on November 15, 2013—even though it should have entered an order within a reasonable amount of time after the September 1, 2010 nonsuit. However, the entering of the final order triggered the expiration of the trial court's plenary power. Because the final order of nonsuit was entered on November 15, 2013, the trial court's plenary power expired 30 days later, on December 16, 2013.

What is extremely interesting is that the trial court entered a final order dismissing all claims on June 3, 2014, and in the order, the trial court admitted to having lost its jurisdiction on December 15, 2013. The trial court stated:

> This court signed its final order of nonsuit as to defendants The Lending Center and Larry Tew on November 15, 2013, even though it had a ministerial duty to do so within a reasonable time after September 1, 2010. This court is aware of no reason which would justify the three year delay. ***This event finally triggered the expiration of this court's plenary jurisdiction in this case on December 15, 2013***, thirty days later. No pleading has been filed which would operate to extend this court's plenary jurisdiction.[65]

---

[64] *Scott & White Mem'l Hosp. v. Schexnider*, 940 S.W.2d 594, 596 (Tex. 1996).
[65] CR 784-86 (emphasis added).

The trial court further stated "because this court's plenary jurisdiction as to all parties in this case ended on December 15, 2013, no further proceedings in this court will be heard."[66]

However, on June 11, 2014, the same trial court that admitted it lost jurisdiction in December of 2013, entered an order of sanctions for conduct that allegedly occurred pre-judgment.[67] The trial court was without a doubt lacking subject matter jurisdiction to enter such order and not only violated the rules of civil procedure, but also violated its own order. As a result, the trial court erred by taking action after its plenary jurisdiction expired.

Because the trial court was without subject matter jurisdiction to enter an order of sanctions, this Court should set aside the trial court's order as null and void as a matter of law.

---

[66] CR 786.
[67] CR 788-90.

17

## II. If the trial court did have jurisdiction—which it did not—it abused its discretion in entering the order of sanctions.

### A. *Standard of review*

If the trial court did in fact have subject matter jurisdiction, then the standard of review when analyzing the sufficiency of an order of sanctions is whether the trial court abused its discretion.[68]

### B. *The trial court abused its discretion by failing to provide a basis for its order of sanctions.*

When a trial court awards a party sanctions the sanctions imposed must be just under the circumstances.[69] When determining whether the sanctions imposed are just, the court considers two factors: (1) whether there is a direct relationship between the offensive conduct and the sanctions; and (2) whether the sanctions are excessive.[70] A just sanction must be directed against the abuse and towards remedying the prejudice caused to the innocent party.[71] And, the trial court must at

---

[68] *Hawkins v. Estate of Volkmann*, 898 S.W.2d 334, 346 (Tex. App.—San Antonio 1994, writ denied).

[69] *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991); *In re Ford Motor Co.*, 988 S.W.2d 714, 718 (Tex. 1998).

[70] *Id.*

[71] *Spohn Hosp. v. Mayer*, 104 S.W.3d 878, 882 (Tex. 2003).

18

least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both.[72]

Furthermore, sanctions awarded under Texas Rule of Civil Procedure 13 must be based on good cause and must describe the conduct giving rise to good cause.[73]

In this case, the sanctions order the court entered was void of facts justifying the sanction.[74] While the trial court stated that it entered sanctions due to alleged disrespect and non-compliance with prior orders, the order fails to articulate any specific facts or details to show that the court was within its discretion to enter such order. Because sufficient facts showing good cause were not stated in the order, there is no way to determine whether a direct relationship exists between the conduct and the sanctions. However, even without sufficient facts, the record contains evidence that the trial court abused its discretion and entered an order of sanctions for an amount equal to Hlavaty and Strnadel's attorney's fees without any justification.

Specifically, at a hearing on a Motion to Dismiss, the trial judge asked Hlavaty and Strnadel how much their attorney's fees were

---

[72] *TransAmerican,* 811 S.W.2d at 917.
[73] Tex. R. Civ. P. 13.
[74] CR 788-90.

through September 1, 2010—the same date the judge stated he thought the case should have been over. And, in correspondence sent to the court by Hlavaty and Strnadel, the attorney's fees equaled $12,113.50 for Hlavaty and $6,151.00 for Strnadel.[75] The trial court judge signed the order for sanctions 5 days later for the exact amount of the attorney's fees sent to the court 5 days prior. However, the trial court was extremely broad and failed to state how this amount was related to the alleged sanctionable conduct.[76] Because the trial court failed to state a basis or provide sufficient facts as to why it entered an order of sanctions, the trial court abused its discretion.

## C. *The trial court abused its discretion by failing to verify the attorney's fees.*

The above-referenced correspondence, sent by Hlavaty and Strnadel, is the only document presented in support of the sanctions award.[77] The document Hlavaty and Strnadel's counsel provided to the court providing a total of attorney's fees allegedly incurred without any supporting documentation, is just that – a document and does not constitute evidence. There was no evidentiary hearing to justify how the

---

[75] CR 787.

[76] CR 788-90.

[77] CR 787.

awarded attorney's fees relate to the alleged sanctionable conduct, and therefore, there is no sworn testimony in the record to support the trial court's award.

Additionally, due to the trial court's failure to hold an evidentiary hearing, CSB had no opportunity to rebut the nature and amount of attorney's fees; so, there is no evidence in the record to support the actual fees incurred and awarded. Specifically, no fee bills or invoices were produced by Hlavaty and Strnadel, and the trial court failed to determine whether the attorney's fees claimed were reasonable and necessary. The trial court further failed to determine whether the fees were actually incurred and related to this matter. Therefore, there is insufficient evidence to support the claimed attorney's fees and the entering of an order based on unverified fees is an abuse of discretion. It is an abuse of discretion for the trial court to award attorney's fees based on numbers pulled out of thin air without any evidence to support it.

### D. The trial court abused its discretion by entering an order of sanctions based on alleged non-compliance with prior vacated orders.

Even if the trial court stated the purpose of the order of sanctions was to remedy any prejudice—which it did not—such assertion would

be false. Specifically, in the order of sanctions, the trial court states that "the [c]ourt has considered that ***prior orders*** designed to require [c]ounterdefendant to participate in the litigation process in good faith and in compliance with court orders were ineffective."[78] Because the only prior orders in the record are discovery orders, it would appear that the trial court is claiming the alleged prejudice was CSB's non-compliance with prior discovery orders. But, what the trial court seems to forget is that a mere eight days prior, it entered a final order that, *inter alia*, stated "[t]his court concludes that ***all orders entered in this cause after September 1, 2010***, other than the order of nonsuit on November 15, 2013, ***are a nullity***, and to the extent this court has the authority to do so, ***they are hereby VACATED.***"[79]

The prior orders in the record—referenced in the order of sanctions—are an order on a motion to compel, entered on July 22, 2013, and an order *nunc pro tunc*, entered on August 21, 2013.[80] These discovery orders were clearly entered after September 1, 2010. Meaning, per the trial court's final order, cited *supra*, the discovery orders were vacated. Therefore, the trial court abused its discretion by

---

[78] CR 788 (emphasis added).
[79] CR 786 (emphasis added).
[80] CR 504; CR 541.

22

entering an order of sanctions based upon discovery orders that it vacated.

As a result, the trial court, without a doubt, abused its discretion by entering an order of sanctions without good cause, without stating facts sufficient to determine whether the sanctions were directly related to alleged wrongful conduct, without sworn verification of the amount awarded, and based upon non-compliance with prior orders that it vacated. Because the trial court abused its discretion, the order of sanctions should be vacated.

## CONCLUSION

The trial court was without subject matter jurisdiction to enter an order of sanctions on June 11, 2014; therefore, the order should be set aside because it is void. However, if this Court determines the trial court did in fact have subject matter jurisdiction—which it did not—the trial court abused its discretion in entering such order and the order of sanctions should be vacated.

## PRAYER

For these reasons, Cross-Appellant Commercial State Bank of El Campo, Texas, Inc. respectfully requests this Court to reverse the trial

court's Order Denying Commercial State Bank's Motion to Vacate Order of Sanctions and set aside Hlavaty and Strnadel's June 11, 2014 Order for Sanctions against Cross-Appellant Commercial State Bank of El Campo, Texas, Inc. and grant Cross-Appellant Commercial State Bank of El Campo, Texas, Inc. any such other and further relief to which it is entitled.

Respectfully submitted,

ROBERTS MARKEL WEINBERG BUTLER HAILEY PC

*/s/ Dawn S. Holiday*

_____

DAWN S. HOLIDAY
TBA No. 24046090
MIA B. LORICK
TBA No. 24091415
2800 Post Oak Blvd, 57th Floor
Houston, TX  77056
Tel: (713) 840-1666;
Fax:  (713) 840-9404
dholiday@rmwbhlaw.com
mlorick@rmwbhlaw.com
ATTORNEYS FOR APPELLEE / CROSS-APPELLANT, COMMERCIAL STATE BANK OF EL CAMPO, TEXAS, INC.

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4 i(3) of the Texas Rules of Appellate Procedure, I certify that the word count in this Cross-Appellant's Brief is 4,388 words.

*/s/ Dawn S. Holiday*

_____

DAWN S. HOLIDAY

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served upon the parties listed below by facsimile, messenger, regular U.S. Mail, certified mail, return receipt requested and/or electronic service in accordance with the Texas Rules of Appellate Procedure on this the 4th day of March, 2015.

*Via Email:*
*wkronzer@kronzer.com*
Walter James Kronzer, III
Walter James Kronzer, III, P.C.
3000 Weslayan, Suite 247
Houston, TX  77027

*Via Email:*
*singletonlaw@sbcglobal.net*
Howard H. Singleton
Singleton Law Firm
109 East Milam Street
Wharton, TX  77488

*/s/ Dawn S. Holiday*

_____

DAWN S. HOLIDAY

# **APPENDIX**

TAB 1:    Trial Court Order Denying Commercial State Bank's Motion to Vacate Order for Sanctions, signed August 29, 2014.


TAB 2:    Trial Court Order of Sanctions signed June 11, 2014.

# APPENDIX
# TAB 1

Cause No. 44,081

| | | |
|---|---|---|
| COMMERCIAL STATE BANK | § | IN THE DISTRICT COURT |
| OF EL CAMPO, TEXAS, INC., | § | |
| Counterdefendant | § | |
| | § | |
| v. | § | OF WHARTON COUNTY, TEXAS |
| | § | |
| PATRICK HLAVATY, *et al.*, | § | |
| Counterplaintiffs | § | 329th JUDICIAL DISTRICT |

## ORDER DENYING COMMERCIAL STATE BANK'S MOTION TO VACATE ORDER FOR SANCTIONS

On this day came on for consideration Counterdefendants Commercial State Bank of El Campo, Texas' Motion to Vacate Order and for Sanctions and the Court, after having considered the Motion and thereto, believes that said Motion should in all things be denied.

ORDERED, ADJUDGED and DECREED that Bank's Motion to Vacate Order and for Sanctions is denied.

Signed this 29 day of Aug , 2014.

_____
PRESIDING JUDGE

APPROVED & ENTRY REQUESTED:

SINGLETON LAW FIRM

By: _____
HOWARD H. SINGLETON
SBN: 18436200
109 East Milam
Wharton, Texas 77488
(979) 532-9800
(979) 532-9805 FAX
ATTORNEY FOR COUNTERPLAINTIFFS
PATRICK HLAVATY AND JEFF STRNADEL

FILED
at 9:15 o'clock M.

AUG 2 9 2014

NERISSA HOUSE
DISTRICT CLERK WHARTON CO., TEXAS
By_____ Deputy

# APPENDIX

# TAB 2



FILED
at ____ o'clock ___ M.

JUN 11 2014

NERISSA HOUSE
DISTRICT CLERK, WHARTON CO., TEXAS
By_____ Deputy

Cause No. 44,081

| | | |
|---|---|---|
| COMMERCIAL STATE BANK | § | IN THE DISTRICT COURT |
| OF EL CAMPO, TEXAS, INC., | § | |
| Plaintiff, | § | |
| | § | |
| | § | |
| v. | § | OF WHARTON COUNTY, TEXAS |
| | § | |
| PATRICK HLAVATY, *et al.*, | § | |
| Defendants. | § | 329ᵗʰ JUDICIAL DISTRICT |

## ORDER OF SANCTIONS

BE IT REMEMBERED that on previous occasions this Court has carried with this case various prayers for sanctions of Defendant/Counterplaintiff Patrick Hlavaty and Defendant/Counterplaintiff Jeff Strnadel. It has become clear to the Court that Plaintiff/Counterdefendant Commercial State Bank of El Campo, Texas, Inc. ("Counterdefendant") has repeatedly conducted itself in the course of this case without due regard for the authority of this Court as a court. Such persistent disrespect has been an affront to the dignity of this and all courts. This Court accordingly recognizes a need for it to exercise its inherent authority pursuant to *Willy v. Coastal Corp.*, 503 U.S. 131 (1992), to sanction this litigant for deliberate misbehavior in the course of these proceedings.

In so doing, the Court has considered that prior orders designed to require Counterdefendant to participate in the litigation process in good faith and in compliance with court orders were ineffective. The Court has determined that there is no lesser or

other type of order or sanction which would serve the purpose of the sanctions ordered below. The Court has also considered that the recalcitrant behavior has occurred while Counterdefendant has been represented by a succession of different attorneys of record, indicating that the disrespect for the judicial process is not a product of poor representation by counsel but of an underlying attitude on the part of the Counterdefendant itself.

Counterdefendant Commercial State Bank of El Campo, Texas, Inc. accordingly is hereby ORDERED to pay as a sanction by _____8/1/14_____, 2014, to Counterplaintiff Patrick Hlavaty and his attorney of record jointly the sum of _____$12,113.50_____ and to Counterplaintiff Jeff Strnadel and his attorney of record jointly the sum of _____$6,151.00_____.

It is further ORDERED, AJUDGED, and DECREED that if Counterdefendant unsuccessfully seeks appellate review of any part of this Order, Counterdefendant is ordered to pay reasonable and necessary attorneys' fees of $15,000.00 for Counterplaintiffs to respond to such appellate action. If appellate relief is unsuccessfully sought from the Supreme Court, Counterdefendant is ordered to pay an additional award of $10,000.00 in reasonable and necessary attorneys' fees to Counterplaintiffs' and their attorney of record jointly.

ORDERED, ADJUDGED, and DECREED that execution will issue on any part of this Order that is not timely paid.

SIGNED this __11__ day of ____June____, 2014.

_____
THE HONORABLE RANDY CLAPP
JUDGE PRESIDING